UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LAVETTE JACOBS, TIFFANY RAINES and SANDI TURNIPSEED, on behalf of themselves and all others similarly situated, | ) ) ) | CASE NO. _____ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CLASS ACTION |
| v. | ) | |
| | ) | |
| L'OREAL USA, INC. and SOFT SHEEN-CARSON, LLC, | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| _____/ | | |

## CLASS ACTION COMPLAINT

Plaintiffs, Lavette Jacobs, Tiffany Raines and Sandi Turnipseed (collectively, "**Plaintiffs**"), on behalf of themselves and all others similarly situated, bring this class action against Defendants, L'Oreal USA, Inc. and Soft Sheen-Carson, LLC (collectively, "**L'Oreal**" or "**Defendants**"), and allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

## INTRODUCTION

1.      This is a class action brought by Plaintiffs, on behalf of themselves and other similarly situated persons, against L'Oreal, USA, Inc. and Soft Sheen-Carson, LLC.  Plaintiffs seek damages and equitable remedies for themselves and the putative Class, which includes consumers who purchased Soft Sheen-Carson Optimum Salon Haircare® brand Amla Legend Rejuvenating Ritual Relaxer ("**Amla Relaxer**" or "**the Product**").

2.      L'Oreal and its consumer products divisions specifically market Amla Relaxer to African American women as an "easy no-mix, no-lye relaxer kit that ensures an easier relaxing process for unified results and superior respect for hair fiber integrity."

3.      Amla Relaxer is sold through the Soft Sheen-Carson website and other online and "brick and mortar" retailers, including, but not limited to, Amazon, Wal-Mart, Target, CVS, Walgreens, Sally Beauty Supply, and other mass drug and beauty supply stores nationwide.

4.      As described herein, an inherent design and/or manufacturing defect in Amla Relaxer causes significant hair loss and skin and scalp irritation, including burns and blistering (collectively, "**the Injuries**").  Defendants provide absolutely no disclosure or warning about these severe consequences of which Defendants have knowledge.  Instead, Defendants make several assertions regarding the Product's purported safe and gentle qualities in their marketing and advertising materials, including that Amla Relaxer is a "rejuvenating ritual" that "refills as it relaxes for amazingly lively-looking hair", "protects [the] scalp & skin", has "anti-breakage" properties, provides "unified results and superior respect for hair fiber integrity," and contains a "powerful anti-oxidant rich in vitamins and minerals."  Amla Relaxer is part of Defendants' Amla Legend product line, as indicated by the large, bold letters on the front and center of every Amla Relaxer package.  In their marketing and advertising materials, Defendants represent that their Amla Legend products, which include Amla Relaxer, are a "secret ritual for hair rejuvenation," and that "Amla oil's intense moisture will rejuvenate every strand, leaving you with thicker-looking, healthier hair," with "unique properties [that] prevent breakage, restore shine, manageability and smoothness."

5.      The Injuries caused by Amla Relaxer are not *de minimus*.  Consumers damaged by the Product often have permanent hair loss.  Plaintiffs and putative Class Members have suffered injury in fact and loss of money and/or property as a result of using Amla Relaxer.

6.      Unknown to Plaintiffs and putative Class Members at the time of purchase, and known to Defendants, Amla Relaxer contains caustic ingredients or combination of ingredients that causes Injuries upon proper application.

7.      While Amla Relaxer is marketed as safe and gentle and containing no lye, it contains numerous caustic ingredients that can and do cause Injuries, including significant hair loss, skin and scalp irritation, burns and blistering, and may also compromise the immune system. Several of the Product ingredients have been banned or found unsafe for use in cosmetics by the European Union, including Diethylhexyl Maleate, Limonene, and Benzyl Salicylate.  In addition, the Cosmetic Ingredient Review panel, which reviews and assesses the safety of ingredients used in cosmetics in the United States, found that Methylisothiazolinone is unsafe for use on the skin. As a result of the defective nature of Amla Relaxer, the Product is unfit for its intended use and purpose.

8.      Defendants are aware that, when used as instructed, the Product causes Injuries due to a known material design or manufacturing defect.  Despite Defendants' longstanding knowledge, Defendants failed to take reasonable steps to disclose to and/or warn Plaintiffs and putative Class Members of the dangers associated with the use of Amla Relaxer.

9.      Instead of warning consumers of the detrimental effects of using Amla Relaxer, Defendants worked to conceal information regarding consumer injuries caused by the Product. Specifically, Defendants initiated private communications with consumers who posted online comments regarding Injuries resulting from their use of Amla Relaxer, and offered to pay for

consumers' medical bills, wigs and other injury-related expenses resulting from the use of Amla Relaxer.  Following these private communications, which provided further notice to Defendants of the dangers associated with using Amla Relaxer, Defendants continued to market, distribute and sell Amla Relaxer with no warnings about the consequences of using the Product as directed by Defendants.

10.     As a result of the inherent design and/or manufacturing defects of Amla Relaxer, Defendants knew or should have known that the Injuries caused by the Product constitute a breach of the Product warranties.  Defendants knew or should have known that Plaintiffs and putative Class Members would suffer damages as a result of the Injuries caused by Amla Relaxer. Notwithstanding, Defendants concealed these facts from Plaintiffs and putative Class Members. Defendants' failure to disclose the inherent design and/or manufacturing defects of Amla Relaxer, which were known to Defendants and unknown to Plaintiffs and putative Class Members at the time of purchase, constitutes both an actionable misrepresentation and omission and an unfair, unlawful, fraudulent, and deceptive business practice.

11.     Because the FDA has limited enforcement ability to regulate cosmetic companies under the Food, Drug & Cosmetic Act, 21 U.S.C. § 301, consumers, including Plaintiffs and Class Members, are at the mercy of cosmetic companies who have the autonomy to decide whether to manufacture and distribute safe products.  Here, Plaintiffs and Class Members relied, to their detriment, on Defendants, who opted to manufacture and distribute a hair product that is defective in design and/or manufacture.  This practice must stop, and Defendants must be subjected to meaningful consequences for their abhorrent conduct.

12.     Plaintiffs and putative Class Members have been damaged by Defendants' concealment and non-disclosure of the defective nature of Amla Relaxer because they were misled regarding the safety and value of the Product.

13.     Based on the dates of the online consumer complaints regarding Amla Relaxer, Defendants have known about the inherent design and/or manufacturing defects of the Product for at least three years.  There are hundreds of similar consumer complaints, including on Defendants' Facebook page, regarding Injuries caused by the Product.  Notwithstanding these complaints, which are described in detail below, Defendants have failed and/or refused to provide an adequate remedy for the systemic Injuries caused by Amla Relaxer.

14.     Rather than address the systemic problems inherent to Amla Relaxer, Defendants have paid off and/or attempted to pay off individual consumers injured by the Product and covered up the problems – all while continuing to market, distribute and sell Amla Relaxer without warning consumers about the dangers of using the Product as directed by Defendants.

15.     Despite notice and knowledge of the problems caused by Amla Relaxer from the numerous consumer complaints directly received and publicly available on the Internet, Defendants have not recalled the Product or warned consumers about the dangers associated with using the Product as directed by Defendants.

16.     If Defendants had disclosed to Plaintiffs and putative Class Members that Amla Relaxer could cause and has caused Injuries when used as directed by Defendants, they would not have purchased the Product.

17.     As a result of Defendants' misconduct, Plaintiffs and putative Class Members have suffered injury in fact, including economic damages.

## PARTIES

18.     Plaintiff, Lavette Jacobs, is and was at all times relevant to this matter a resident of the state of Kentucky.

19.     Plaintiff, Tiffany Raines, is and was at all times relevant to this matter a resident of the state of Florida.

20.     Plaintiff, Sandi Turnipseed, is and was at all times relevant to this matter a resident of the state of New York.

21.     Defendant, L'Oréal USA, Inc., is a Delaware corporation.  At all times relevant to this matter, L'Oreal USA, Inc. was a citizen of the state of New York with a principal place of business in New York, New York.  At all times relevant to this complaint, L'Oréal USA, Inc. has transacted business in this judicial district and throughout the United States, including Florida, Kentucky and New York.

22.     Defendant, Soft Sheen-Carson, LLC, is a New York domestic limited liability company.   At all times relevant to this matter, Soft Sheen-Carson, LLC was a citizen of the state of New York with a principal place of business in New York, New York.  At all times relevant to this complaint, Soft Sheen-Carson, LLC has transacted business in this judicial district and throughout the United States, including Florida, Kentucky and New York.

## JURISDICTION AND VENUE

23.     This Court has personal jurisdiction over Defendants in this matter.  The acts and omissions giving rise to this action occurred in the state of New York.  Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or

sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiffs and putative Class Members, which arose out of the acts and omissions that occurred in the state of New York, during the relevant time period, at which time Defendants were engaged in business activities in the state of New York.

24.    Under 28 U.S.C. § 1391, venue is proper in the Southern District of New York because Defendants conduct business in this District, maintain principal places of business in this District, and have intentionally availed themselves of the laws and markets within this District.

## FACTS COMMON TO ALL CLASS MEMBERS

25.    At all times relevant to this matter, Defendants created, developed, marketed, sold and distributed Amla Relaxer to consumers throughout the United States.

26.    AMLA Relaxer was first marketed, sold and distributed throughout the United States beginning in 2013.  The Product is sold through the Soft Sheen-Carson website, and through other online and "brick and mortar" retailers, including Amazon, Wal-Mart, Target, CVS, Walgreens, Sally Beauty Supply, and other mass drug and beauty supply stores nationwide. SOFTSHEEN-CARSON,         http://www.softsheen-carson.com/optimum-salon-haircare/amla-legend-no-mix-no-lye-relaxer?upc=0752850088423 (last visited Aug. 18, 2016).

27.    In connection with the marketing and promotion of Amla Relaxer, Defendants made the following representations via the Product's Facebook page:

- "Try our new AMLA Legend No-Mix, No-Lye Relaxer for **a finish that leaves hair visibly fuller, silkier and nourished.**" https://www.facebook.com/search/top/?q=amla%20relaxer&filters_rp_creation_time=%7B%22start_year%22%3A%222013%22%2C%22end_year%22%3A%222013%22%7D. (last visited August 19, 2016) (emphasis added).

- "For a relaxer infused with amla oil that **leaves your hair with more body and bounce** try our AMLA Legend Relaxer."  https://www.facebook.com/AmlaLegend (last visited May 13, 2016) (emphasis added).

7

- **"Retain body and gain amazing inner strength of fibers** using our new AMLA Legend Relaxer." https://www.facebook.com/AmlaLegend (last visited May 13, 2016) (emphasis added).

- "Our new AMLA Legend Oil Infusion Cream Relaxer is our first no-mix, no-lye relaxer kit consisting of a lithium base infused with **amla oil in each step enhancing nourishment and oil penetration to the hair**." https://www.facebook.com/AmlaLegend/photos/a.339409049451191.79225.3226498844 60441/473449459380482/ (last visited August 18, 2016).

28.    On Defendants' website, Defendants have promoted Amla Relaxer with the following representations:

- "An easy no-mix, no-lye cream relaxer kit that ensures an easier relaxing process for unified results and **superior respect for hair fiber integrity**. Our oil infusion technology is fast acting and long lasting." https://web.archive.org/web/20150419014200/http://www.softsheen-carson.com/Optimum-Salon-Haircare/Amla-Legend-No-Mix-No-Lye-Relaxer?UPC=0752850088423 (last visited August 18, 2016) (emphasis added).

- **"Superior straightening, amazing body & shine**. **Rejuvenate** with the 1st no-mix relaxer with amla oil." https://web.archive.org/web/20150419014200/http://www.softsheen-carson.com/Optimum-Salon-Haircare/Amla-Legend-No-Mix-No-Lye-Relaxer?UPC=0752850088423 (last visited August 18, 2016) (emphasis added).

29.    In addition, the Wal-Mart website contains the following representations regarding Amla Relaxer:

- "Optimum Salon Haircare unveils its first Rejuvenating Ritual for your hair, Optimum Amla Legend No-Mix, No-Lye Relaxer. It's infused with a legendary Indian beauty secret: amla oil. Amla is derived from the amla superfruit, and is known as a powerful anti-oxidant, rich in vitamins and minerals, and **renowned for its natural rejuvenating properties of intense nourishment and conditioning**. Experience the legendary power of amla oil!"

  WAL-MART, https://www.walmart.com/ip/Optimum-Amla-Legend-No-Mix-No-Lye-Relaxer/ 24548828 (last visited Aug. 18, 2016) (emphasis added).

- **"Superior Straightening, Amazing Body & Shine** An easy no-mix, no-lye cream relaxer kit that ensures **an easier relaxing process for unified results and superior respect for hair fiber integrity**. Our oil infusion technology is fast acting and long lasting."

8

WAL-MART, https://www.walmart.com/ip/Optimum-Amla-Legend-No-Mix-No-Lye-Relaxer/ 24548828 (last visited Aug. 18, 2016) (emphasis added).

30.     The packaging for Amla Relaxer also contains the following representations regarding the Product's purported attributes:

- "Refills to reveal visibly fuller, silkier hair"
- "Refills as it relaxes for amazingly lively-looking hair"
- "Optimum Salon Haircare unveils its 1st Rejuvenating Ritual for your hair, infused with a legendary Indian beauty secret: AMLA Oil"
- "powerful anti-oxidant rich in vitamins and minerals"
- "natural rejuvenating properties of intense nourishment and conditioning"
- "protects scalp"
- "infuses hydration & conditioning"
- "anti-breakage" and
- "intense conditioning"





31.     Lye relaxers can be abrasive and cause scalp irritation and chemical burns.  By representing on the front of the Product packaging, in capitalized and bold letters, that Amla Relaxer has "NO-LYE," Defendants led reasonable consumers to believe that Amla Relaxer is non-abrasive, safe and gentle, and will not cause Injuries, including scalp burning or irritation, and/or hair loss.

32.     The emphasized statements discussed above are false, deceptive and/or misleading. In reality, Amla Relaxer can and does cause Injuries, including burning, skin irritation and hair loss, when used in accordance with the instructions provided with the Product as directed by Defendants.

33.     Defendants know, or should know, of the caustic and dangerous nature of Amla Relaxer.  There are hundreds of consumer complaints on the Internet, including on Defendants' Facebook page, about the Product causing burning and hair loss.  These consumer complaints date back to 2013, shortly after the Product was released to the public:

- "**Your Amla Legend relaxer is very bad, it broke my hair really bad, i am goin to advise my friends not to even try it.** I have been using Dark n Lovely products for years and they work realy well so i thought id try the new Amla Legend product. **My hair broke so bad that i was tempted to**

**cut it, left a bald patch on my right side.** Wow i will never use this product ever." – Facebook post, September 18, 2013.

- "I applied Amla Legend Rejuvenating Ritual Relaxer about two hours ago, and **I had hair that was somewhere between shoulder length and armpit length. I followed all of the instructions very carefully, but when I was shampooing and rinsing, I realized that very large clumps of my hair were falling out.** Now, after finishing the shampoo/conditioning process, **I have almost no hair in the front of my head, where I used to have medium-length hair.** I also have to go to my daughter's graduation tomorrow night, and now I have a hair disaster with a large bald spot [] I'm making this post to warn others about their new relaxer, and make sure that on one has to cut off all of their hair like I have to now. **As for SoftSheen-Carson, I hope you discontinue the product, and give everyone who bought it a warning and refund!!! I will warn all of my friends to stay away from your Amla Legend Relaxer unless they ant large bald spots in their hair!!!** PLEASE DON'T BUY AMLA LEGEND REJUVENATING RITUAL RELAXER!!!" – Facebook post, June 6, 2013.

- "Amla Legend this relaxer you have for ALL hair types should be taken OFF every shelf known to mankind! **This is not a relaxer! It is some kind of chemical that will take a woman's hair out from the ROOTS!** I was using your rejuvenating oil you have & my hair seemed to be growing but I still used a kiddie relaxer. Well a week ago TODAY I went to my local Walgreen's but they were out of those & I made the BIGGEST MISTAKE OF MY LIFE by buying YOUR relaxer & **NOW I have to wear weave,** which I HATE, but because **the relaxer took my hair completely out from the ROOTS** I have NO OTHER CHOICE! I HAVE more bald spots THEN HAIR! I am VERY UPSET & DISAPPOINTED in YOUR product because THANK GOD my sister is the Google Queen & she pulled up reviews & **y'all have COMPLAINTS on THIS ONE relaxer from 2013! WHY would you still have this product on ANY shelves!** I bet Tracee Eliss Ross (or however she spells it) doesn't know she's representing **a company that is LITERALLY SCALPING black women!** I PROMISE YOU I will TELL EVERYONE I KNOW NOT TO YUSE YOUR RELAXER! & YES I WILL BE CONTACTING YOUR COMPANY AS SOON AS I FIGURE OUT HOW!" – AMLA Legend Facebook post, July 4, 2015.

- "I bought the Amla Legend Relaxer and I didn't look up reviews first. **Within minutes, literally 3 or 4, my head was on fire!!! There is so many bad reviews on this relaxer! Other users experienced extreme chemical burns and major fall out!** I just hope mine doesn't fall out! Wayyyyy to strong. Will NEVER buy again!" – Facebook post, October 4, 2015.

- "**I have never experienced burns like the burns from this product.** buy the time I walked up the stairs to the bathroom it was unbearable. I pray my

11

skin returns to normal and they should be sued." – Amazon Review, April 26, 2013

- "Do NOT buy if you love your hair."

  "A little background: I'm 30 years old, with medium to fine high-density hair. I've been relaxing my own hair since I was 19, and prior to that, my mother did my relaxers. Always relaxed my hair once every 3-4 months because I could always manage my new growth. I've never had any issues with breakage/falling out, anything at all after relaxing my hair."

  "Until now."

  "Note above that I said I had some high-density hair. So even though my hair is medium to fine, I had a heck of a lot of hair (think Chaka Khan, seriously). **After using the ENTIRE bottle of neutralizer, when I went to detangle after conditioning, my hair started coming out in chunks. Just, chunks of hair coming out. It's a week later, and my hair is still coming out. And I'm not talking about breakage, I'm talking about the entire strand is coming out from the root (and I have armpit length hair).** So now, I'm taking every step I can to preserve the length and get my density back since I now have extremely thinned out hair..." –Amazon Review, April 26, 2013.

- "PLEASE DO NOT BUY THIS RELAXER!!! THIS IS THE WORST RELAXER I HAVE EVER USED!!! **IT CAUSED SEVERE DAMAGE TO MY HAIR AND I AM NOW DEALING WITH BALDING AND SHEDDING FOR THE FIRST TIME IN MY LIFE!!!** DO NOT USE OPTIMUM AMLA RELAXER IF YOU WANT TO KEEP YOUR HAIR!!! I ALMOST NEVER POST REVIEWS BUT AFTER USING THIS PRODUCT I FEEL COMPELLED TO WARN OTHER WOMEN ABOUT THIS PRODUCT!!! I AM GOING TO TELL EVERYONE I KNOW TO STAY AWAY FROM THIS CRAP IN A JAR!!! TO THE MAKERS OF THIS PRODUCT: YOU SHOULD BE ASHAMED BUT THANKS FOR HELPING ME MAKE UP MY MIND TO GO NATURAL!!!! I WILL NEVER USE ANY SOFT SHEEN PRODUCTS EVER AGAIN!!! IF I COULD SUE I WOULD!!!" – Amazon Review, May 6, 2013.

- "Don't use it! My 26 year old daughter is upstairs crying her eyes out because her **hair is gone.** And I (her mother) relaxed it for her. We **followed directions she has been relaxing for years.** We did not leave it on too long. She **now has no hair on the sides or back of her head. Even with the scalp protector and vaseline around her edges No Hair and her scalp is burned badly I did notice a lot of hair loss during rinsing** but never imagined this. Stay away from this product I didn't know how to do no stars

so I did one but for us it's a big fat 0 stars." –Amazon Review, September 27, 2013.

- "This product will make your hair fall out. **I only had it on for about 10 min and my hair was breaking off in chunks. Whatever is left on my head is soo damaged I feel like it all needs to be cut off.** A class action lawsuit should be filed." – Amazon Review, December 22, 2014.

- "Do not use!!!! Usually when I use relaxers it's to loosen the curl I have. **This relaxer is like pure lye!!!!!** I have a short hair cut, took only 6 minutes to apply and **immediately my scalp was burning so bad I was in tears!** My bathroom to my kitchen sink is literally 20ft, I had to put the water to the coldest setting to get relief. Thank God I'm a hair stylist and know what to do to repair my hair!!!! This is the worst product Optimum has ever put our. The relaxers before were good but this one is trash. The alma styling products are good but the relaxer.....TERRIBLE." – Amazon Review, June 15, 2015.

  "First I must say that I had shoulder length hair before using this relaxer! I bought this relaxer from Walmart due to the "no mix" in hopes of a quicker process. **This relaxer took my haircut in clumps. It is now 3 weeks later and my hair is still coming out! I have bald spots in the back of my head and I will now have to cut my hair off and start all over. If you love your hair please DO NOT buy this product.**" –Amazon Review, October 11, 2015.

  "DO NOT USE THIS PRODUCT!!!! I BOUGHT THIS RELAXER FROM A SALLY BEAUTY SUPPLY IN TEXAS. **MY HAIR IS EXTREMEY DAMAGED. I HAVE A BALD SPOT IN THE CROWN OF MY HEAD, MY HAIR HAS COME OUT AROUND MY EDGES AND NAPE AREA AND THROUGHOUT MY HAIR I HAVE SHORT DAMAGED SPOTS. I WEAR MY HAIR SHORT AND NOW I HAVE ALMOST NO HAIR. I NOW HAVE TO WEAR WIG. I AM DEVASTATED!!!!**" – Amazon Review, March 19, 2016.

AMLA LEGEND, https://www.facebook.com/AmlaLegend/ (last visited Aug. 18, 2016) (emphasis added).

34.   Despite notice and knowledge of the Injuries caused by Amla Relaxer via the numerous consumer complaints Defendants have directly received and which are publicly available on the Internet, Defendants have failed and/or refused to provide an adequate remedy for the systemic Injuries caused by the Product.  Defendants have not recalled the Product or warned

consumers about the dangers associated with using the Product as directed by Defendants. Instead, on occasions when consumers have reported Injuries, Defendants have covertly offered to pay consumers' medical expenses caused by using the Product as directed by Defendants, along with conditioning treatments and wigs to cover the resulting hair loss. In short, rather than address the systemic problems inherent to the Product, Defendants pay – or attempt to pay – off individual consumers and cover up the problems, while continuing to market, distribute and sell the Product without warning consumers about the severe and known consequences of using the Product as directed by Defendants.

35.    As a result of the false, deceptive and misleading statements on the Product packaging and in corresponding marketing materials, including material omissions regarding the dangerous and unsafe nature of the Product, Plaintiffs and putative Class Members purchased Amla Relaxer with no reason to know or suspect the dangers associated with using the Product as directed by Defendants. Not until Injuries occurred would a putative Class Member have reason to know or suspect that Amla Relaxer is defective. Even after sustaining Injuries, consumers might not immediately make the connection due to Defendants' false, deceptive and misleading statements regarding the purported safe and gentle nature of the Product, and the active concealment of the Product defects.

36.    As the direct and proximate result of Defendants' false, deceptive and/or misleading statements, and material omissions, Plaintiffs and putative Class Members have suffered injury in fact and a loss of money or property through the out-of-pocket costs expended to purchase Amla Relaxer, as well as the costs of mitigating the Injuries sustained as a result of using the Product as directed by Defendants.

37.     By marketing, selling and distributing Amla Relaxer to consumers throughout the United States, Defendants made actionable statements that Amla Relaxer was free of defects in design and/or manufacture, and that it was safe and fit for its ordinary intended use and purpose. Further, Defendants concealed what they knew or should have known about the safety risks resulting from the material defects in design and/or manufacture of the Product.

38.     Defendants made the above-described actionable statements, and engaged in the above-described omissions and concealments with knowledge that the representations were false, deceptive and/or misleading, and with the intent that consumers rely upon such omissions and concealments.  Alternatively, Defendants were reckless in not knowing that these representations and material omissions were false and/or misleading at the time they were made.

**PLAINTIFFS' FACTUAL ALLEGATIONS**

### a.   **Plaintiff Jacobs' Experience**

39.     After viewing advertisements and Product packaging for Amla Relaxer regarding its purported safe, innovative and gentle qualities, Plaintiff Lavette Jacobs purchased Amla Relaxer from Sally Beauty Company in Lexington, Kentucky, on June 9, 2016, and applied the Product on the same day.

40.     As a result of Defendants' misrepresentations and omissions, Plaintiff Jacobs purchased Amla Relaxer because she reasonably believed that the Product was safe and would be gentle on her hair.   Plaintiff Jacobs would not have purchased Amla Relaxer if she knew of its propensity to cause Injuries, including scalp burning, irritation and hair loss.

41.     Plaintiff Jacobs had previously used Amla Legend® brand products, but not Amla Relaxer.

42.     Plaintiff Jacobs followed the application instructions on the Product packaging, as directed by Defendants.

43.     Immediately upon application, Plaintiff Jacobs' scalp began to burn and her hair began to fall out.  She continues to have hair loss and layers of her hair are missing.

44.     Shortly after applying the Product and experiencing scalp burning and hair loss, Plaintiff Jacobs contacted Defendants via telephone to inform them of her experience using Amla Relaxer and her resulting injuries.  During the telephone call, Defendants informed Plaintiff Jacobs that there was nothing they could or would do, and that her hair would grow back.

45.     Ultimately, Plaintiff Jacobs was forced to cut her hair and undertake expensive solutions to her hair loss, including hair extensions to cover the hair loss.  To date, Plaintiff Jacobs' hair has not fully grown back.

**b. Plaintiff Raines' Experience**

46.     After viewing advertisements and Product packaging for Amla Relaxer regarding its purported safe, innovative and gentle qualities, Plaintiff Tiffany Raines purchased Amla Relaxer from a Walgreens in Green Cove Springs, Florida in August 2014, and applied the Product on August 23, 2014.

47.     As a result of Defendants' representations and omissions, Plaintiff Raines purchased Amla Relaxer because she reasonably believed that the Product was safe and would be gentle on her hair.  Plaintiff Raines would not have purchased the Amla Relaxer had she known of its propensity to cause Injuries, including scalp burning, irritation and hair loss.

48.     Plaintiff Raines had previously used relaxer products, which never caused hair loss or serious injuries like those she suffered as a result of using Amla Relaxer as directed by

16

Defendants.  At no time did Defendants provide Plaintiff Raines with any warnings concerning the potential dangers and hazards of using Amla Relaxer as directed by Defendants.

49.     Plaintiff Raines followed the application instructions on the Product packaging, as directed by Defendants.

50.     Within minutes of using Amla Relaxer, Plaintiff Raines' hair began to fall out in clumps.   Plaintiff Raines also experienced scalp burning and irritation.

51.     Ultimately, Plaintiff Raines was forced to cut her hair and undertake expensive solutions to mitigate her hair loss.  Specifically, she purchased Keranique® brand hair regrowth products for which she paid $159.00 plus tax, shipping and handling.  After these products proved unsuccessful, she then paid for hair extensions to cover the hair loss.  To date, Plaintiff Raines' hair has still not fully grown back.

### c.  Plaintiff Turnipseed's Experience

52.     After viewing advertisements and Product packaging for Amla Relaxer regarding its purported safe, innovative and gentle qualities, Plaintiff Sandi Turnipseed purchased Amla Relaxer from a Wal-Mart in Newburgh, New York in March 2016 and applied the Product in early June 2016.  Plaintiff Turnipseed specifically purchased Amla Relaxer because she was in the process of growing her hair out and believed that the Product's no-mix, no-lye attributes would be gentle and not impair the strength of her hair.

53.     As a result of Defendants' representations and omissions, Plaintiff Turnipseed purchased Amla Relaxer because she reasonably believed that the Product was safe and would be gentle on her hair.   Plaintiff Turnipseed would not have purchased the Amla Relaxer had she known of its propensity to cause Injuries, including scalp burning, irritation and hair loss.

17

54.     At no time did Defendants provide Plaintiff Turnipseed with any warnings concerning the potential dangers and hazards of using Amla Relaxer as directed by Defendants.

55.     Plaintiff Turnipseed followed the application instructions on the Product packaging, as directed by Defendants.  Within minutes of using Amla Relaxer as directed by Defendants, Plaintiff Turnipseed's scalp, forehead and skin began to burn.  In addition, her hair then fell out in clumps.  Scabs, which were noticeable to others, quickly formed on her scalp and forehead and took weeks to heal.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs bring this action on their own behalf, and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as:

> All purchasers of Soft Sheen-Carson Optimum Salon Haircare® brand Amla Legend Rejuvenating Ritual Relaxer in the United States or its territories between January 1, 2013 and the present.

57.     Excluded from the Class are (a) any person who purchased Amla Relaxer for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in the Lawsuit, as well as the Judge's staff and their immediate family members.

58.     Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

59. Plaintiffs also bring this action on their own behalf, and on behalf of the following Subclasses pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Subclasses are defined as:

**New York Subclass**

All persons who reside in the state of New York and purchased Soft Sheen-Carson Optimum Salon Haircare® brand Amla Legend Rejuvenating Ritual Relaxers between January 1, 2013 and the present.

**Florida Subclass**

All persons who reside in the state of Florida and purchased Soft Sheen-Carson Optimum Salon Haircare® brand Amla Legend Rejuvenating Ritual Relaxers between January 1, 2013 and the present.

**Kentucky Subclass**

All persons who reside in the state of Kentucky and purchased Soft Sheen-Carson Optimum Salon Haircare® brand Amla Legend Rejuvenating Ritual Relaxers between January 1, 2013 and the present.

60. Excluded from the Subclasses are (a) any person who purchased Amla Legend Relaxer for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in the Lawsuit, as well as the Judge's staff and their immediate family members.

61. Plaintiffs reserve the right to amend the definitions of the Subclasses if discovery or further investigation reveals that the Subclasses should be expanded or otherwise modified.

62.     **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members.  Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

63.     **Predominance of Common Questions of Law and Fact.**  Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Class Members.  These common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendants failed to comply with their warranties;

b.  Whether Defendants' conduct constitutes a breach of applicable warranties;

c.  Whether Amla Legend Relaxer causes burning, scalp irritation and/or hair loss upon using the Product as directed by Defendants;

d.  Whether Amla Legend Relaxer contains design defects;

e.  Whether Amla Legend Relaxer is defective in its manufacture;

f.  Whether and when Defendants knew or should have known that Amla Legend Relaxer causes burning, scalp irritation and/or hair loss upon using the Product as directed by Defendants;

g.  Whether Defendants were unjustly enriched by the conduct described herein;

h.  Whether Defendants' acts, omissions or misrepresentations of material facts constitute fraud;

i.  Whether Defendants' acts, omissions or misrepresentations of material facts violated certain state deceptive practice acts, including those of Kentucky, Florida and/or New York;

j.  Whether Defendants' acts, omissions or misrepresentations of material facts make them liable to Plaintiffs and the putative Class for negligence and strict products liability;

k.  Whether Plaintiffs and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of Defendants' acts, omissions or misrepresentations of material facts;

l.  Whether Plaintiffs and putative Class Members are entitled to monetary damages and, if so, the nature of such relief; and

m.  Whether Plaintiffs and putative Class Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

64.     Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class as a whole.   In particular, Defendants have designed, manufactured, marketed, sold and/or distributed a defective Product, which Defendants know or should have known causes Injuries to consumers upon using the Product as directed by Defendants, and provided no disclosure or warning to consumers regarding these severe consequences.

65.     **Typicality.**  Plaintiffs' claims are typical of the claims of the Members of the putative Class and respective Subclasses, as each putative Class and Subclass Member was subject to the same common, inherent defect in the Product.  Plaintiffs share the aforementioned facts and

legal claims or questions with putative Class and Subclass Members, and Plaintiffs and all putative Class and Subclass Members have been similarly affected by Defendants' common course of conduct alleged herein. Plaintiffs and all putative Class and Subclass Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' breach of warranties and other wrongful conduct as alleged herein.

66.    **Adequacy.**  Plaintiffs will fairly and adequately represent and protect the interests of the putative Class and respective Subclasses.  Plaintiffs have retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation.  Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action.

67.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a.   The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

    b.   Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

    c.   The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

    d.   Individual joinder of all putative Class Members is impracticable;

    e.   Absent a Class, Plaintiffs and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

    f.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and putative Class Members can seek redress for the harm caused by Defendants.

68.   In the alternative, the Class may be certified for the following reasons:

    a.   The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

    b.   Adjudications of individual Class Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

    c.   Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, et seq.)
### (On behalf of the Nationwide Class)

69.   Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

70.   Plaintiffs assert this cause of action on behalf of the Nationwide Class.

71.   Defendants sold Amla Relaxer as part of their regular course of business.

23

72. Plaintiffs and putative Class Members purchased Amla Relaxer either directly from Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens and/or Sally Beauty Supply, among others.

73. The Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

74. Amla Relaxer is a "consumer product" as that term is defined by 15 U.S.C. § 2301(1), as it constitutes tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

75. Plaintiff and Members of the putative Class are "consumers" and "buyers" as defined by 15 U.S.C. § 2301(3), since they are buyers of the Product for purposes other than resale.

76. Defendants are entities engaged in the business of making and selling cosmetics, either directly or indirectly, to consumers such as Plaintiff and the putative Class.  As such, Defendants are "suppliers" as defined in 15 U.S.C. § 2301(4).

77. Defendants made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiffs, putative Class Members and Defendants.  Defendants expressly warranted that the Product was fit for its intended purpose by making the express warranties that the Product is an "anti-breakage" and "intense conditioning" "rejuvenating ritual" that is "rich in vitamins in minerals" and which "[r]efills to reveal visibly fuller, silkier hair", "protects scalp & skin" and "infuses hydration & conditioning".

78. Defendants' aforementioned written affirmations of fact, promises and/or descriptions, as alleged, are each a "written warranty."  The affirmations of fact, promises and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Warranty

Act, 15 U.S.C. §2301(6).

79.     Defendants breached the applicable warranty because Amla Relaxer suffers from latent and/or inherent defects that cause substantial Injuries, rendering Amla Relaxer unfit for its intended use and purpose.  This defect substantially impairs the use, value and safety of the Product.

80.     The latent and/or inherent defects at issue herein existed when Amla Relaxer Products left Defendants' possession or control and were sold to Plaintiffs and putative Class Members.  The defects were not discoverable by Plaintiffs and putative Class Members at the time of their purchase of the Product.

81.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.  Defendants were placed on reasonable notice of the defect in their Products and their breach of the warranty, and have failed to cure the defects for Plaintiffs and putative Class Members, despite having several years to do so.

82.     Shortly after applying the Product and experiencing scalp burning and hair loss, Plaintiff Jacobs contacted Defendants to inform them of her user experience and injuries caused by Amla Relaxer.  However, Defendants informed her there was nothing they could or would do, and that her hair would grow back.  Defendants were provided further notice of the problems with Amla Relaxer through the numerous complaints received directly from Plaintiffs and putative Class Members.

83.     Defendants breached their express warranties as Amla Relaxer did not contain the properties it was represented to possess.

84.     Defendants' breaches of warranties have caused Plaintiffs and putative Class

Members to suffer Injuries, pay for a defective Product, and enter into transactions they would not have entered into for the consideration paid.  As a direct and proximate result of Defendants' breaches of warranties, Plaintiffs and putative Class Members have suffered damages and continue to suffer damages, including economic damages in terms of the cost of Amla Relaxer and the cost of efforts to mitigate the damages caused by using the Product.

85.     As a result of Defendants' breaches of these warranties, Plaintiffs and putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.  Plaintiffs and the putative Class therefore seek and are entitled to recover damages and other legal and equitable relief, injunctive relief and costs and expenses (including attorneys' fees based upon actual time expended), as provided in 15 U.S.C. § 2310(d).

## COUNT II
## BREACH OF EXPRESS WARRANTY, N.Y. U.C.C. §2-313
### (On behalf of the New York Subclass)

86.     Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

87.     Plaintiff Turnipseed asserts this cause of action on behalf of herself and the New York Subclass.

88.     Plaintiff Turnipseed and New York Subclass Members purchased Amla Relaxer either directly from Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens and/or Sally Beauty Supply, among others.

89.     Defendants are and were at all relevant times merchants under N.Y. U.C.C. §2-313.

90.     Defendants, as the designers, manufacturers, marketers, distributors, or sellers

expressly warranted that the Product was fit for its intended purpose by making the express warranties that the Product is an "anti-breakage" and "intense conditioning" "rejuvenating ritual" that is "rich in vitamins in minerals" and which "[r]efills to reveal visibly fuller, silkier hair", "protects scalp & skin" and "infuses hydration & conditioning".

91.     Defendants made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff Turnipseed, New York Subclass Members and Defendants.

92.     In fact, the Product is not fit for such purpose because each of the express warranties is false and misleading.

93.     Defendants breached this warranty and/or contract obligation by placing the Product into the stream of commerce and selling it to consumers, when it does not contain the properties it was represented to possess.  Rather, Amla Relaxer suffers from latent and/or inherent design and/or manufacturing defects that cause substantial Injuries, rendering Amla Relaxer unfit for its intended use and purpose.  These defects substantially impair the use, value and safety of the Product.

94.     The latent and/or inherent design and/or manufacturing defects at issue herein existed when Amla Relaxer left Defendants' possession or control and was sold to Plaintiff Turnipseed and New York Subclass Members.  The defects were not discoverable by Plaintiff Turnipseed and New York Subclass Members at the time of their purchase of the Product.

95.     Plaintiff Turnipseed and the New York Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Product if they knew the truth about the Product.

<u>**COUNT III**</u>
**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(On behalf of the New York Subclass)**

96.     Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

97.     Plaintiff Turnipseed asserts this cause of action on behalf of herself and the New York Subclass.

98.     To the extent Defendants' commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.

99.     Plaintiff Turnipseed and New York Subclass Members purchased Amla Relaxer either directly from Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens and/or Sally Beauty Supply, among others.

100.    Defendants expressly warranted that the Product was fit for their intended purpose in that Product was an "anti-breakage" and "intense conditioning" "rejuvenating ritual" that is "rich in vitamins in minerals" and which "[r]efills to reveal visibly fuller, silkier hair", "protects scalp & skin" and "infuses hydration & conditioning".

101.    Defendants made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff Turnipseed, New York Subclass Members and Defendants.

102.    Defendants breached this warranty and/or contract obligation by placing the Product into the stream of commerce and selling it to consumers, when it does not contain the properties it was represented to possess.  Rather, Amla Relaxer suffers from latent and/or inherent design and/or manufacturing defects that cause substantial Injuries, rendering Amla Relaxer unfit for its intended use and purpose.  These defects substantially impair the use, value and safety of

the Product.

103.     The latent and/or inherent design and/or manufacturing defects at issue herein existed when Amla Relaxer left Defendants' possession or control and was sold to Plaintiff Turnipseed and New York Subclass Members.  The defects were not discoverable by Plaintiff Turnipseed and New York Subclass Members at the time of their purchase of the Product.

104.     As a direct and proximate cause of Defendants' breach of contract, Plaintiff Turnipseed and the New York Subclass Members were harmed because they would not have purchased the Product if they knew the truth about the Product.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**
**(On behalf of the Florida Subclass)**

105.     Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

106.     Plaintiff Raines asserts this cause of action on behalf of herself and the Florida Subclass.

107.     Defendants manufactured, marketed, distributed and sold Amla Relaxer as part of their regular course of business.

108.     Defendants expressly represented and warranted that Amla Relaxer is an "anti-breakage" and "intense conditioning" "rejuvenating ritual" that is "rich in vitamins in minerals" and which "[r]efills to reveal visibly fuller, silkier hair", "protects scalp & skin" and "infuses hydration & conditioning".

109.     Plaintiff Raines and Florida Subclass Members purchased Amla Relaxer either directly from Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens and/or Sally Beauty Supply, among others.

110.     Defendants made the foregoing express representations and warranties to all

29

consumers, which became the basis of the bargain between Plaintiff Raines, Florida Subclass Members and Defendants.

111.    Defendants breached the foregoing express warranties by placing Amla Relaxer into the stream of commerce and selling it to consumers, when the Product does not contain the properties it was represented to possess.  Rather, Amla Relaxer suffers from latent and/or inherent design and/or manufacturing defects that cause substantial Injuries, rendering Amla Relaxer unfit for its intended use and purpose.  These defects substantially impair the use, value and safety of the Product.

112.    The latent and/or inherent design and/or manufacturing defects at issue herein existed when Amla Relaxer left Defendants' possession or control and was sold to Plaintiff Raines and Florida Subclass Members.  The defects were not discoverable by Plaintiff Raines and Florida Subclass Members at the time of their purchase of the Product.

113.    Defendants were provided reasonable notice of the aforementioned Product defects and their breach of the above-described warranties via direct communications and complaints from consumers who reported Injuries sustained as a result of using the Product as directed by Defendants.  Defendants were provided further notice of the Product defects and the breach of warranties via the hundreds of consumer complaints, including complaints from putative Class Members, posted on various websites, including, but not limited to, Defendants' own websites and Amazon.

114.    Plaintiff Raines and Florida Subclass Members were injured as a direct and proximate result of Defendants' breaches of warranties because they would not have purchased Amla Relaxer if the true facts had been known.  Specifically, Plaintiff Raines and Florida Subclass Members have suffered economic damages in connection with the purchase of Amla Relaxer and

the out-of-pocket costs required to mitigate the Injuries caused by using the Product as directed by Defendants.  As described above, within minutes of using the Product as directed by Defendants, Plaintiff Raines' hair began to fall out in clumps, and she suffered scalp burning and skin irritation.

115.    As a result of Defendants' breaches of these warranties, Plaintiff Raines and Florida Subclass Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain

## COUNT V
## BREACH OF EXPRESS WARRANTY
### (On behalf of the Kentucky Subclass)

116.    Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

117.    Plaintiff Jacobs asserts this cause of action on behalf of herself and the Kentucky Subclass.

118.    Defendants manufactured, marketed, distributed and sold Amla Relaxer as part of their regular course of business.

119.    Defendants made affirmations of fact and promises on the Product packaging and through the marketing and advertising described herein.  As described herein, Defendants expressly represented and warranted that Amla Relaxer is an "anti-breakage" and "intense conditioning" "rejuvenating ritual" that is "rich in vitamins in minerals" and which "[r]efills to reveal visibly fuller, silkier hair", "protects scalp & skin" and "infuses hydration & conditioning".

120.    Defendants made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff Jacobs, Kentucky Subclass Members and Defendants.

121.    Plaintiff Jacobs and the Kentucky Subclass Members purchased Amla Relaxer either directly from Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens and/or Sally Beauty Supply, among others.

122.    Defendants breached the foregoing express warranties by placing Amla Relaxer into the stream of commerce and selling it to consumers, when the Product does not contain the properties it was represented to possess.  Rather, Amla Relaxer suffers from latent and/or inherent design and/or manufacturing defects that cause substantial Injuries, rendering Amla Relaxer unfit for its intended use and purpose.  These defects substantially impair the use, value and safety of the Product.

123.    The latent and/or inherent design and/or manufacturing defects at issue herein existed when Amla Relaxer left Defendants' possession or control and was sold to Plaintiff Jacobs and Kentucky Subclass Members.  The defects were not discoverable by Plaintiff Jacobs and Kentucky Subclass Members at the time of their purchase of the Product.

124.    Defendants were provided reasonable notice of the aforementioned Product defects and their breach of the above-described warranties via direct communications and complaints from consumers who reported Injuries sustained as a result of using the Product as directed by Defendants.  Defendants were provided further notice of the Product defects and the breach of warranties via the hundreds of consumer complaints, including complaints from putative Class Members, posted on various websites, including, but not limited to, Defendants' own websites and Amazon.  In addition, shortly after applying the Product and experiencing scalp burning and hair loss, Plaintiff Jacobs contacted Defendants via telephone to inform them of her experience using Amla Relaxer and her resulting injuries.  During the telephone call, Defendants informed Plaintiff Jacobs that there was nothing they could or would do, and that her hair would grow back.

125.     Plaintiff Jacobs and Kentucky Subclass Members were injured as a direct and proximate result of Defendants' breaches of warranties because they would not have purchased Amla Relaxer if the true facts had been known.  Specifically, Plaintiff Jacobs and Kentucky Subclass Members have suffered economic damages in connection with the purchase of Amla Relaxer and the out-of-pocket costs required to mitigate the Injuries caused by using the Product as directed by Defendants.  As described above, within minutes of using the Product as directed by Defendants, Plaintiff Jacobs' scalp began to burn and her hair began to fall out, and she continues to have hair loss and layers of her hair are missing.

126.     As a result of Defendants' breaches of these warranties, Plaintiff Jacobs and Kentucky Subclass Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain

## COUNT VI
## NEGLIGENT DESIGN AND FAILURE TO WARN
### (On behalf of the Nationwide Class and/or State Subclasses)

127.     Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

128.     Plaintiffs assert this cause of action on behalf of the Nationwide Class and/or the State Subclasses.

129.     At all times material to this action, Defendants were responsible for designing, formulating, testing, manufacturing, inspecting, packaging, marketing, distributing, supplying and/or selling Amla Relaxer to Plaintiffs and putative Class Members.

130.     At all times material to this action, Plaintiffs and putative Class Members' use of Amla Relaxer in a manner that was intended and/or reasonably foreseeable by Defendants involved a substantial risk of sustaining Injuries.

33

131.    At all times material to this action, the risk of sustaining Injuries was known or should have been known to Defendants in light of the generally recognized and prevailing knowledge available at the time of manufacture and design.

132.    Defendants knew—or by the exercise of reasonable care should have known—that Amla Relaxer would have and did have the alleged design defects.

133.    Amla Relaxer is not a "rejuvenating ritual" as described on the package.  Rather, it is composed of caustic ingredients, several of which have been banned or found unsafe for use in cosmetics by the European Union, including Diethylhexyl Maleate, Limonene, and Benzyl Salicylate.  In addition, the Cosmetic Ingredient Review panel, which reviews and assesses the safety of ingredients used in cosmetics in the United States, found that Methylisothiazolinone is unsafe for use on the skin.  Defendants knew, or should have known, that these ingredients were caustic and could cause scalp burning, irritation and hair loss.  Defendants nonetheless failed to disclose this vital information to consumers.

134.    Defendants knew that Plaintiffs and putative Class Members—who used Defendants' Amla Relaxer for its intended use and as directed by Defendants—were members of a foreseeable class of persons who were and are at risk of suffering serious inconvenience and expense solely because of the design defects.

135.    Defendants, as the producers, manufacturers, distributors and/or sellers of Amla Relaxer, had a duty to exercise reasonable care for the safety of Plaintiffs and putative Class Members who were using the Product as directed by Defendants.  At the time Defendants produced, manufactured, distributed, and/or sold Amla Relaxer, they owed a non-delegable duty to persons like Plaintiffs and putative Class Members to exercise ordinary and reasonable care to properly design Amla Relaxer, and they had a continuing duty to warn about the dangers and

hazards associated with the intended use of the Product, as described herein.

136.    Defendants have received hundreds or more consumer complaints of Injuries resulting from use of the Product.  Upon learning of these complaints, a further duty arose to provide a warning to consumers that use of the Product as intended could result in Injuries.

137.    Notwithstanding the aforementioned duty, Defendants were negligent by one or more of the following acts or omissions in that Defendants:

a.    Failed to give adequate warnings to purchasers and users of Amla Relaxer, including Plaintiffs and Class Members, regarding the risks and potential dangers of using the defective Product as directed by Defendants;

b.    Failed to recommend and/or provider proper cautions and warnings to ensure the safety of Plaintiffs and putative Class Members;

c.    Failed to investigate or adequately investigate the safety hazards associated with the intended use of Amla Relaxer;

d.    Negligently designing a Product with serious safety hazards and risks;

e.    Oversold the benefits and/or minimized the risks associated with use of the Product.

138.    Defendants knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using Amla Relaxer as directed by Defendants, and knew that Plaintiffs and Class Members could not reasonably be aware of those risks.  Defendants failed to exercise reasonable care in providing Class Members with adequate warning.

139.    As a direct and proximate result of Defendants' negligent design and failure to adequately warn consumers that use of Amla Relaxer could cause Injuries, Plaintiffs and putative Class Members have suffered damages as set forth herein.

140.    Plaintiffs and putative Class Members have not committed any contributory negligence.

<u>**COUNT VII**</u>
**STRICT PRODUCT LIABILITY**
**(On behalf of the Nationwide Class and/or State Subclasses)**

141.    Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

142.    Plaintiffs assert this cause of action on behalf of the Nationwide Class and/or the State Subclasses.

143.    At all times material to this action, Defendants were responsible for designing, formulating, testing, manufacturing, inspecting, packaging, marketing, distributing, supplying and/or selling Amla Relaxer to Plaintiffs and putative Class Members.

144.    Amla Relaxer is sold through the Soft Sheen-Carson website and other retailers, including Amazon, Wal-Mart, Target, CVS, Walgreens, Sally Beauty Supply, and other mass drug and beauty supply stores nationwide.

145.    As described herein, Amla Relaxer possessed a defect in manufacturing in that the formula can and does cause substantial Injuries upon using the Product as directed by Defendants.

146.    The defect in the Product existed at the time the Product left Defendants' possession and was introduced into the stream of commerce.

147.    The Product caused Injuries to Plaintiffs and putative Class Members in that it caused and or causes substantial scalp burning, irritation and hair loss, as described herein.

148.    Plaintiffs and putative Class Members' use of Amla Relaxer occurred in a manner that was reasonably foreseeable to Defendants.

## COUNT VIII
## FRAUD
### (On behalf of the Nationwide Class and/or State Subclasses)

149.    Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

150.    Plaintiffs assert this cause of action on behalf of the Nationwide Class and/or the State Subclasses.

151.    As alleged herein, Defendants knowingly made material misrepresentations and omissions regarding the Product on their website and in Product advertisements.

152.    Defendants made these material misrepresentations and omissions in order to induce Plaintiffs and putative Class Members to purchase the Product.

153.    Rather than inform consumers about the dangers and hazards associated with using Amla Relaxer, Defendants represented the Product as  a "rejuvenating ritual"  that "refills as it relaxes for amazingly lively-looking hair" that "protects [the] scalp & skin," has "anti-breakage" properties, provides "unified results and superior respect for hair fiber integrity" and contains a "powerful anti-oxidant rich in vitamins and minerals."  Defendants further represent their Amla Legend products, including Amla Relaxer, as a "secret ritual for hair rejuvenation," that "will rejuvenate every strand, leaving you with thicker-looking, healthier hair," with "unique properties [that] prevent breakage, restore shine, manageability and smoothness."

154.    Amla Relaxer is not a "rejuvenating ritual" as described on the package.  Rather, it is composed of caustic ingredients, several of which have been banned or found unsafe for use in cosmetics by the European Union, including Diethylhexyl Maleate, Limonene, and Benzyl Salicylate.  In addition, the Cosmetic Ingredient Review panel, which reviews and assesses the safety of ingredients used in cosmetics in the United States, found that Methylisothiazolinone is unsafe for use on the skin.

37

155.    Defendants knew Amla Relaxer was not a "rejuvenating ritual" that "preserv[ed] hair fiber integrity" and "prevent[ed] breakage," but nevertheless made such representations through its marketing, advertising and product labeling.  In reliance on these and other similar representations, Plaintiffs and putative Class Members were induced to, and did pay monies, to purchase the Product.

156.    Had Plaintiffs known the truth about the dangers and hazards associated with Amla Relaxer, they would not have purchased the Product.

157.    As a proximate result of the fraudulent conduct of Defendants, Plaintiff and the putative Class paid monies to Defendants through their regular retail sales channels, to which Defendants are not entitled, and have been damaged in an amount to be proven at trial.

**COUNT IX**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Class and/or State Subclasses)**

158.    Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

159.    Plaintiffs assert this cause of action on behalf of the Nationwide Class and/or State Subclasses.

160.    Plaintiffs and putative Class Members conferred a benefit on Defendants when they purchased Amla Relaxer, of which Defendants had knowledge.  By their wrongful acts and omissions described herein, including selling Amla Relaxer with latent defects and insufficient warnings, Defendants were unjustly enriched at the expense of Plaintiffs and putative Class Members.

161.    Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

162.    Defendants have profited from their unlawful, unfair, misleading, and deceptive

practices at the expense of Plaintiffs and putative Class Members under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling Amla Relaxer.

163.    Plaintiffs and putative Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased Amla Relaxer on the same terms or for the same price had they known of the dangers and hazards associated with use of the Product.

164.    Defendants either knew or should have known that Payments rendered by Plaintiffs and putative Class Members were given and received with the expectation that Amla Relaxer was safe for use as intended. It is inequitable for Defendants to retain the benefit of payments under these circumstances.

165.    Plaintiffs and putative Class Members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

166.    When required, Plaintiffs and Class Members are in privity with Defendants because Defendants' sale of Amla Relaxer was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendants' agents for the purpose of the sale of Amla Relaxer.

167.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

**COUNT X**
**UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF**
**NEW YORK GBL § 349, et. seq.**
**(On behalf of New York Subclass)**

168.    Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

169.    Plaintiff Turnipseed asserts this cause of action on behalf of the New York Subclass.

170.    Defendants' foregoing acts and practices, including their omissions, were directed at consumers.

171.    Defendants' foregoing deceptive acts and practices, including their omissions, were material, in part, because they concerned an essential part of the Product's functionality and safety. Defendants omitted material facts regarding the dangers and hazards associated with Amla Relaxer by failing to disclose that the Product can and does cause substantial Injuries when used as intended.   Rather than disclose this information, Defendants represented the Product as a "rejuvenating ritual" that "refills as it relaxes for amazingly lively-looking hair," that "protects [the] scalp & skin," has "anti-breakage" properties, provides "unified results and superior respect for hair fiber integrity" and contains a "powerful anti-oxidant rich in vitamins and minerals". Defendants further represent their Amla Legend products, including Amla Relaxer, as a "secret ritual for hair rejuvenation," that "will rejuvenate every strand, leaving you with thicker-looking, healthier hair," with "unique properties [that] prevent breakage, restore shine, manageability and smoothness."

172.    Amla Relaxer is not a "rejuvenating ritual" as described on the package.  Rather, it is composed of caustic ingredients, several of which have been banned or found unsafe for use in cosmetics by the European Union, including Diethylhexyl Maleate, Limonene, and Benzyl

Salicylate.  In addition, the Cosmetic Ingredient Review panel, which reviews and assesses the safety of ingredients used in cosmetics in the United States, found that Methylisothiazolinone is unsafe for use on the skin.  Defendants did not disclose this information to consumers.

173.    Defendants' foregoing deceptive acts and practices, including their omissions, were and are deceptive acts or practices in violation of New York's General Business Law section 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, *et. seq.,* in that:

    a.   Defendants designed, formulated, manufactured, inspected, packaged, marketed, distributed, supplied and/or sold Amla Relaxer when they knew, or should have known, that it was materially defective and could cause and has caused substantial scalp burning, irritation and hair loss when used as intended;

    b.   Defendants knew the defect in the Amla Relaxer was unknown to and would not be easily discovered by Plaintiffs and New York Subclass Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Product; and

    c.   Defendants failed to warn consumers that Amla Relaxer could cause and has caused substantial scalp burning, irritation and hair loss when used as directed by Defendants.

174.    Plaintiff Turnipseed and the New York Subclass Members were deceived by Defendants' failure to disclose and could not discover the hazards and defects themselves before suffering damages and Injuries.

175.    Plaintiff Turnipseed and the New York Subclass Members suffered damages when they purchased Defendants' Amla Relaxer, which was materially defective.  Defendants' unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiffs and the New

York Subclass Members who were unaware of the Product defects when they purchased it.

176.    Defendants' foregoing deceptive acts and practices, including their omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff Turnipseed and putative New York Subclass Members, would not have purchased Amla Relaxer had they known about the hazards and Injuries associated with the intended use of the Product.

177.    As a direct and proximate result of Defendants' deceptive acts and practices, including their omissions, Plaintiff Turnipseed and New York Subclass Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

178.    In addition, Plaintiff Turnipseed and New York Subclass Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

### COUNT XI
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, §501.201, *ET SEQ.*, FLORIDA STATUTES ("FDUTPA")
### (on behalf of Florida Subclass)

179.    Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

180.    Plaintiff Raines asserts this cause of action on behalf of herself and the Florida Subclass.

181.    Plaintiff Raines and the Florida Subclass Members are "consumers" as defined by Florida Statute §501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

182.    At all times material to this action, Defendants were responsible for designing,

42

formulating, testing, manufacturing, inspecting, packaging, marketing, distributing, supplying and/or selling Amla Relaxer to Plaintiff Raines and Florida Subclass Members.  Amla Relaxer is a "good" within the meaning of FDUTPA.

183.    FDUPTA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

184.    For the reasons discussed herein, Defendants violated and continue to violate FDUPTA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, et seq.  Defendants' omissions and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

185.    Defendants' actions constitute unconscionable, deceptive or unfair acts or practices.  Defendants omitted material facts regarding the dangers and hazards associated with Amla Relaxer by failing to disclose that the Product can cause and has caused substantial Injuries when used as intended, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, in violation of FDUTPA.

186.    Specifically, Defendants engaged in the following deceptive and misleading conduct in violation of FDUTPA:

> a.    Defendants designed, formulated, manufactured, inspected, packaged, marketed, distributed, supplied and/or sold Amla Relaxer when it knew, or should have known, that it was materially defective and could cause and had caused substantial Injuries, including scalp burning, irritation and hair loss when used as intended;

b.  Defendants knew the defect in the Amla Relaxer was unknown to and would not be easily discovered by Plaintiff Raines and Florida Subclass Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Product;

c.  Defendants failed to warn consumers that AMLA Legend Relaxer could cause substantial scalp burning, irritation and hair loss when used as intended.

187.  Rather than warn consumers about the dangers and hazards associated with the intended use of Amla Relaxer, Defendants represented the Product as a "rejuvenating ritual" that "refills as it relaxes for amazingly lively-looking hair", that "protects [the] scalp & skin", has "anti-breakage" properties, provides "unified results and superior respect for hair fiber integrity" and contains a "powerful anti-oxidant rich in vitamins and minerals."  Defendants further represent their Amla Legend products, including Amla Relaxer, as a "secret ritual for hair rejuvenation," that "will rejuvenate every strand, leaving you with thicker-looking, healthier hair" with "unique properties [that] prevent breakage, restore shine, manageability and smoothness."

188.  Amla Relaxer is not a "rejuvenating ritual" as described on the package.  Rather, it is composed of caustic ingredients, several of which have been banned or found unsafe for use in cosmetics by the European Union, including Diethylhexyl Maleate, Limonene, and Benzyl Salicylate.  In addition, the Cosmetic Ingredient Review panel, which reviews and assesses the safety of ingredients used in cosmetics in the United States, found that Methylisothiazolinone is unsafe for use on the skin.  Defendants did not disclose this information to consumers.

189.  Plaintiff Raines and Florida Subclass Members suffered damages when they purchased the Product, which was materially defective.  Defendants' unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff Raines and Florida Subclass Members

who were unaware of the Product defects at the time of purchase.

190.    Defendants' acts and omissions regarding Amla Relaxer, as described herein, were likely to – and did – deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff Raines and putative Florida Subclass Members, would not have purchased Amla Relaxer had they known about the damages and hazards associated with the intended use of the Product as directed by Defendants.

191.    As a direct and proximate result of Defendants' unconscionable, unfair and deceptive acts, practices and omissions alleged herein, Plaintiff Raines and Florida Subclass Members have been damaged and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.   In addition, Plaintiff Raines and the Florida Subclass seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

192.    Plaintiff Raines and the Florida Subclass Members reserve the right to allege other violations of FDUTPA as Defendants' conduct is ongoing.

## COUNT XII
### VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### KENTUCKY REV. STATUTES § 367.110, et, seq. (KCPA)
### (on behalf of Kentucky Subclass)

193.    Plaintiffs repeat and re-allege the allegations in paragraphs 1-68 as though fully set forth herein.

194.    Plaintiff Jacobs asserts this cause of action on behalf of the Kentucky Subclass.

195.    Defendants have a statutory duty pursuant to the Kentucky Consumer Protection Act, KRS § 367.110, et seq., not to engage in unfair, false, misleading, and deceptive acts in the conduct of any trade or commerce.

196.    Defendants, by engaging in the above described conduct, including the sale of the

Product to consumers, have violated the Kentucky Consumer Protection Act, KRS § 367.170.

197.  Defendants' actions constitute unconscionable, deceptive or unfair acts or practices.  Defendants omitted material facts regarding the dangers and hazards associated with Amla Relaxer by failing to disclose that the Product can cause substantial Injuries when used as intended, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, in violation of the KCPA.

198.  Specifically, Defendants engaged in the following deceptive and misleading conduct in violation of the KCPA:

    a.  Defendants designed, formulated, manufactured, inspected, packaged, marketed, distributed, supplied and/or sold Amla Relaxer when it knew, or should have known, that it was materially defective and could cause substantial Injuries, including scalp burning, irritation and hair loss when used as intended as directed by Defendants;

    b.  Defendants knew the defect in the Amla Relaxer was unknown to and would not be easily discovered by Plaintiff Jacobs and Kentucky Subclass Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Product; and

    c.  Defendants failed to warn consumers that Amla Relaxer could cause substantial Injuries, including scalp burning, irritation and hair loss when used as intended.

199.  Rather than warn consumers about the dangers and hazards associated with the intended use of Amla Relaxer, Defendants represented the Product as a "rejuvenating ritual" that "refills as it relaxes for amazingly lively-looking hair", that "protects [the] scalp & skin" has "anti-breakage" properties, provides "unified results and superior respect for hair fiber integrity" and

contains a "powerful anti-oxidant rich in vitamins and minerals." Defendants further represent their Amla Legend products, including Amla Relaxer, as a "secret ritual for hair rejuvenation," that "will rejuvenate every strand, leaving you with thicker-looking, healthier hair" with "unique properties [that] prevent breakage, restore shine, manageability and smoothness."

200.    By reason of the foregoing, Plaintiff Jacobs and Kentucky Subclass Members have been damaged and are entitled to an award of compensatory and punitive damages in the amount to be determined at the trial of this matter. In addition thereto, Plaintiff Jacobs and the Kentucky Subclass Members are entitled to reasonable attorneys' fees and costs incurred in bringing this action.

201.    The Kentucky Consumer Protection Act also authorizes the award of equitable relief, including disgorgement. Plaintiff Jacobs and the Kentucky Subclass seek disgorgement of the profits.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and putative Class Members, pray for a judgment:

a.   Determining that this action is a proper class action and certifying the Class and Subclasses, as defined herein;

b.   Appointing the named Plaintiffs as representatives of the Class and their respective Subclasses;

c.   Appointing the undersigned as Class Counsel;

d.   Finding Defendants liable to Plaintiffs and Class Members for actual damages in such amount(s) as the Court or Jury may determine;

e.   Awarding statutory damages as appropriate;

f.   Awarding pre- and post-judgment interest;

g.   Awarding injunctive and declaratory relief, as claimed herein;

h.   Awarding Plaintiffs and Class Members attorneys' fees and all litigation costs;

i.   Awarding compensatory damages against Defendants in favor of Plaintiffs and the Class for damages sustained as a result of Defendants' wrongdoing; and

j.   Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 19, 2016

**TYCKO & ZAVAREEI LLP**

/s/  Jonathan K. Tycko
Jonathan K. Tycko (SDNY Bar No. JT2012, New York Bar No. 2568483)
Andrea Gold (DC Bar No. 502607)*
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone:  (202) 973-0900
Facsimile:  (202) 973-0950
jtycko@tzlegal.com
agold@tzlegal.com

and

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Rachel Soffin (Florida Bar No. 018054)*
Jonathan B. Cohen (Florida Bar No. 0027620)*
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
rsoffin@forthepeople.com
jcohen@forthepeople.com

and

**BARBAT, MANSOUR & SUCIU PLLC**
Nick Suciu III*
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
Telephone:  (313) 303-3472
nicksuciu@bmslawyers.com

*Pending pro hac vice application*

*Attorneys for Plaintiffs and putative Class Members*