UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
                           :

In re: AMLA LITIGATION          :

                           :

                           :

                           :

                           :

                           :

———————————————————— x

Consolidated Case No. 1:16-cv-06593 (JSR)

# **<u>REDACTED</u>**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND
<u>APPOINTMENT OF CLASS COUNSEL</u>**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  SUMMARY OF COMMON FACTS.....................................................................3

    A.   The Product and Its Uniformly Unsafe Formulation ..................................3

    B.   Defendants' Uniform False and Misleading Representations ......................5

    C.   Use of the Relaxer Results in Scalp Burning, Irritation, Hair Breakage and Hair Loss—A Fact Long Known to Defendants and Unknown to Consumers.....................................................................................................6

III. THE LEGAL STANDARDS FOR CLASS CERTIFICATION .........................9

IV.  PLAINTIFFS MEET THE REQUIREMENTS FOR CLASS CERTIFICATION ..........10

    A.   The National Class, New York and Florida Subclasses, and Multistate Class (For Economic Injuries) Meet the Requirements of Rule 23(a)..................12

        1.   The Classes and Subclasses Satisfy the Numerosity Requirement............12

        2.   Commonality Is Satisfied..........................................................................12

        3.   Plaintiffs' Claims Are Typical .................................................................13

        4.   Plaintiffs Will Adequately Represent the Proposed Class Members.........14

            a.   Plaintiffs' Interests Do Not Conflict with the Class Or Subclasses ............................................................................14

            b.   Plaintiffs' Counsel Are Qualified .................................................15

    B.   The Non-Economic Injury Class Meets Rule 23(a)'s Requirements...................15

    C.   Each of the Classes and Subclasses Is Objectively Ascertainable........................16

    D.   The National Class, New York and Florida Subclasses, and Multistate Class Satisfy Rule 23(b)(3)........................................................................................17

        1.   Common Questions of Law or Fact Predominate.....................................17

            a.   The Elements of Fraud and Negligent Misrepresentation Can Be Established Through Common Proofs ..............................18

            b.   The Elements of the New York Consumer Protection Claims Can Be Established with Common Proof .........................19

| | | c. | The Elements of the Florida Consumer Protection Claim Can Be Established with Common Proof | 20 |
| | | d. | The Elements of the New York and Florida Unjust Enrichment Claims Can Be Established with Common Proof | 20 |
| | | e. | The Elements of the Breach of Warranty Claims Can Be Established with Common Proof | 21 |
| | 2. | | Class Litigation Is Superior to Other Methods of Adjudication | 22 |
| E. | | | The New York and Florida Subclasses Satisfy Rule 23(b)(2) | 22 |
| F. | | | The Non-Economic Injury Class Satisfies Rule 23(c)(4) | 23 |
| V. | CONCLUSION | | | 25 |

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643, 670-71 (C.D. Cal. 2014) ...................................................................... 19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591, 617 (1997) ........................................................................................... 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455, 459 (2013) ........................................................................................... 18

*Arreola v. Godinez*,
    546 F.3d 788, 799-800 (7th Cir. 2008) ...................................................................... 25

*Balderramo v. Go N.Y. Tours Inc.*,
    No. 15-cv-2326 (ER), 2017 WL 2819863, at *2 (S.D.N.Y. June 28, 2017) .......... 9, 10, 13

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
    448 F.3d 573, 579 (2d Cir. 2006) ............................................................................... 20

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796, 800 (7th Cir. 2013) ............................................................................. 24

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656, 661 (7th Cir. 2004) ............................................................................. 25

*Caronia v. Philip Morris USA, Inc.*,
    No. 06-cv-00224 (SBA) (SMG), 2010 WL 520558, at *4 (E.D.N.Y. Feb. 11,
    2010) ......................................................................................................................... 25

*Cnty. of Monroe, Florida v. Priceline.com, Inc.*,
    265 F.R.D. 659, 671 (S.D. Fla. 2010) ....................................................................... 21

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426, 1429 (2013) ..................................................................................... 19

*Consol. Rail Corp. v. Hyde Park*,
    47 F.3d 473, 483 (2d Cir. 1995) ................................................................................. 12

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152, 158 (S.D.N.Y. 2008) ....................................................................... 14

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561, 565 (S.D.N.Y. 2014) ................................................................. passim

*Flores v. Anjost Corp.*,
284 F.R.D. 112, 122 (S.D.N.Y. 2012) ........................................................... 10

*Gortat v. Capala Bros., Inc.*,
257 F.R.D. 353, 361 (E.D.N.Y. 2009) ........................................................... 10

*Guido v. L'Oreal, USA, Inc.*,
284 F.R.D. 468, 480-83 (C.D. Cal. 2012) ..................................................... 20

*Hart v. BHH, LCC*,
No. 15-cv-4804, 2017 WL 2912519, at * 8 (S.D.N.Y. July 7, 2017) .............. 18, 21, 22

*Hernandez v. Motor Vessel Skyward*,
61 F.R.D. 558 (S.D. Fla. 1973), *aff'd without opinion*, 507 F.2d 1278 (5th Cir. 1975) ........................................................................................................... 9

*In re Blech Sec. Litig.*,
187 F.R.D. 97, 102 (S.D.N.Y. 1999) ............................................................. 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29, 35 (2d Cir. 2009) ................................................................. 13, 14

*In re Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24, 41 (2d Cir. 2006) ..................................................................... 10

*In re Nassau Cty. Strip Search Cases*,
461 F.3d 219, 227-28 (2d Cir. 2006) ............................................................ 17

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55, 75 (S.D.N.Y. 2009) .............................................................. 17

*In re Petrobras Sec. Litig.*,
No. 16-cv-1914, 2017 WL 2883874, at *8 (2d Cir. July 7, 2017) ............... 16, 17

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397, 412-14 (S.D.N.Y. 2015) .................................................... 18

*In re US Foodserv. Pricing Litig.*,
729 F.3d 108, 118 (2d Cir. 2013) ............................................................ 10, 18

*In re Veeco Instruments, Inc. Sec. Litig.*,
235 F.R.D. 220, 237 (S.D.N.Y. 2006) .......................................................... 10

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124, 132-33 (2d Cir. 2001) ............................................................. 9

*James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*,
275 F.R.D. 638, 647 (M.D. Fla. 2011) ...................................................... 20, 21

*Jermyn v. Best Buy Stores, L.P.*,
  256 F.R.D. 418, 436-37 (S.D.N.Y. 2009) .............................................................. 21, 23

*Kurtz v. Kimberly-Clark Corp.*,
  No. 14-cv-1142 et al., 2017 WL 1155398, at *54 (E.D.N.Y. Mar. 27, 2017) ................ 23

*Leider v. Ralfe*,
  387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) .......................................................... 19

*Lizondro-Garcia v. Kefi LLC*,
  300 F.R.D. 169, 175 (S.D.N.Y. 2014) ................................................................. 13

*Marisol A. v. Giuliani*,
  126 F.3d 372, 377 (2d Cir. 1997) ...................................................................... 13

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247, 1253 (2d Cir. 2002) ............................................................. 10, 18

*Morrissey v. Nextel Partners, Inc.*,
  72 A.D.3d 209, 895 N.Y.S.2d 580 (App. Div. 2010) ............................................. 20

*Muzuco v. Re$ubmitIt, LLC*,
  297 F.R.D. 504, 521 (S.D. Fla. 2013) ................................................................ 21

*Nelson v. Mead Johnson Nutrition Co.*,
  270 F.R.D. 689, 697-98 (S.D. Fla. 2010) ............................................................ 20

*Ortega v. Nat. Balance, Inc.*,
  300 F.R.D. 422, 430 (C.D. Cal. 2014) ................................................................ 19

*Pella Corp. v. Saltzman*,
  606 F.3d 391, 393-94 (7th Cir. 2010) ............................................................ 24, 25

*Pelman v. McDonald's Corp.*,
  396 F.3d 508, 511 (2d Cir. 2005) ...................................................................... 19

*Pub. Emples. Ret. Sys. of Miss. V. Merrill Lynch & Co.*,
  277 F.R.D. 97, 107 (S.D.N.Y. 2011) .................................................................. 14

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497, 523-24 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493 (2016).................... 19

*Robidoux v. Celani*,
  987 F.2d 931, 936-37 (2d Cir. 1993) ................................................................. 13

*Robinson v. Metro-N. Commuter R.R. Co.*,
  267 F.3d 147, 167 (2d Cir. 2001).................................................................... 24

*Rodriguez v. It's Just Lunch, Int'l*,
300 F.R.D. 125, 141 (S.D.N.Y. 2014) .................................................. 18, 21

*Seijas v. Republic of Argentina*,
606 F.3d 53, 58 (2d Cir. 2010)............................................................ 22

*Spagnola v. Chubb Corp.*,
574 F.3d 64, 74 (2d Cir. 2009)............................................................ 19

*Sterling v. Velsicol Chem. Corp.*,
855 F.2d 1188, 196 (6th Cir. 1988) .................................................... 9, 24

*Stinson v. City of N.Y.*,
282 F.R.D. 360, 373 (S.D.N.Y. 2012) ................................................ 12, 13

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70, 80 (2d Cir. 2015)............................................................ 23

*Valenti v. Citigroup, Inc.*,
837 F. Supp. 2d 304, 327-28 (S.D.N.Y. 2011) ................................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338, 350-51 (2011) ............................................................... 9, 13, 23

**STATUTES**

Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204 ........ 11, 12, 13, 23

New York's General Business Law § 349 ......................................................... passim

U.C.C. § 2-313 Cmt. 3 ..................................................................................... 21

**RULES**

Fed. R. Civ. P. 1 .............................................................................................. 9

Fed. R. Civ. P. 23(a) ....................................................................................... 9, 12

Fed. R. Civ. P. 23(a)(1) ................................................................................... 15

Fed. R. Civ. P. 23(a)(2) ................................................................................... 12, 15

Fed. R. Civ. P. 23(a)(3) ................................................................................... 13, 16

Fed. R. Civ. P. 23(a)(4) ................................................................................... 14, 16

Fed. R. Civ. P. 23(b) ....................................................................................... 9

Fed. R. Civ. P. 23(b)(2) ................................................................................... 1, 22

Fed. R. Civ. P. 23(b)(3)...................................................................... passim

Fed. R. Civ. P. 23(c)(4)...................................................................... passim

**OTHER AUTHORITIES**

Essay, *The Role of Judges in a Government of, by, and for the People: Notes for the Fifty–Eighth Cardozo Lecture*,
30 Cardozo L. Rev. 1, 177 (2008) .................................................................. 10

# I. INTRODUCTION

Defendants L'Oréal USA, Inc. and Soft Sheen-Carson, LLC (collectively, "Defendants") have endangered and lied to consumers who relax their hair, in particular, African American women all to increase their profits. Defendants uniformly represent on product packaging and advertising that their Amla Legend Rejuvenating Ritual Relaxer (hereafter, the "Kit" or "Product") has "No-Lye," and contains "Amla Oil from India" that will rejuvenate, nourish and condition hair. These representations are reinforced by pictures of an African American woman with beautiful, silky and shiny hair on the Kit packaging. The Product packaging also represents that a "Scalp Protector," ostensibly to protect the scalp, is included. These marketing claims were made on the Kit which was placed into commerce before Defendants conducted *any* substantiation.

Rather than rejuvenate, nourish or condition hair, the Kit causes scalp irritation and burning, dry and brittle hair, hair breakage and loss. Internal company records show that Defendants have known about these problems since the Product launched in 2012, and since then have repeatedly received many consumer complaints about it, yet the Product—with its deceptive representations—remains on store shelves. Plaintiffs now seek to certify claims on behalf of national and state classes of Product buyers (defined below on pages 11-12) for a full refund and/or statutory damages pursuant to Fed. R. Civ. P. 23(b)(3); declaratory and injunctive relief claims pursuant to Fed. R. Civ. P. 23(b)(2); and for liability under Fed. R. Civ. P. 23(c)(4).

Plaintiffs' allegations and claims are suitable for class treatment and can be proven using common evidence. The basis of the consumer protection, fraud, negligent misrepresentation and breach of warranty claims are Defendants' uniform representations, which were false and misleading because, in reality, the Product does not rejuvenate or nourish hair; nor is it more gentle on hair or skin than a lye-based relaxer. Instead, the Relaxer Cream, as formulated with

Defendants' lithium hydroxide "pro-solvent" technology, is harsh like a lye-based relaxer. Further, the Product contains miniscule amounts of amla oil (███ to ███, at only ███ activity), such that the oil does not deliver any of the promised benefits especially in the presence of harsh chemicals; and the so-called "Scalp Protector" does not provide a protective barrier between the scalp and the relaxer cream. Plaintiffs can prove the false, misleading, and fraudulent nature of Defendants' representations based on common evidence, including, expert testimony regarding the Product's dangerous formulation—which was uniform throughout the Class Period—as well as company documents acknowledging the scalp and hair damage, and company studies showing that consumers interpret the phrase "no-lye," which was front and center on the Kit packaging, to mean a more gentle relaxer with fewer or no harsh and damaging chemicals. Defendants obviously intended to capitalize on the consumer interpretation of "no-lye." Consumers who bought the Product, which failed to deliver the promised benefits—because it could not—are entitled to a full refund and/or statutory damages. Thus, common issues predominate with respect to these claims.

Additionally, despite the plethora of consumer complaints of scalp injuries, hair breakage and loss, and internal plans to potentially discontinue the Product and/or "manage it down slowly," it remains on store shelves, with uniform representations that mislead consumers to believe that it will benefit, rather than damage, their hair. Therefore, certification of Plaintiffs' claims for declaratory and injunctive relief is also appropriate and necessary.

Finally, there are a large number of persons who have suffered extensive physical injuries as a result of the Product. On behalf of persons who seek damages for personal injuries, Plaintiffs ask the Court to certify the issue of liability for the negligence and strict liability claims pursuant to Rule 23(c)(4). The vast majority of women injured by the Product will receive no relief at all in connection with their personal injuries if a Rule 23(c)(4) issue class is not certified. As explained

below, Plaintiffs meet the requirements for class certification and respectfully request that the Court grant this motion.

## II. SUMMARY OF COMMON FACTS

### A. The Product and Its Uniformly Unsafe Formulation[1]

The Product is marketed and sold as a five-step "rejuvenating ritual" designed to rejuvenate, nourish and condition hair. Rosner Decl., Exs. 9-10. It is sold as a kit of five components—a Scalp Protector; the No-Mix, No-Lye Relaxer Cream ("Relaxer Cream"); Neutralizing Shampoo; Conditioner; and Oil Moisturizer. *Id.* The first step in the process is to apply the Scalp Protector around the neck, ears, and scalp. *Id.*, Ex. 11. The Scalp Protector is supposed to protect the scalp from any irritation in the event that the Relaxer Cream comes in contact with the scalp. *Id.* at Ex. 4, at 16:4-5.

The second step in the process is to apply the Relaxer Cream to the hair. *Id.* at Ex. 11. The Product packaging represents that it works in 13-15 minutes.[2] *Id.* at Ex. 22. The next step in the process is to use the Neutralizing Shampoo, which is supposed to completely wash out the Relaxer Cream and stop the relaxation process. *Id.* The following step is to apply the Conditioner. *Id.* at Ex. 11. The final step is to apply the "Damage Antidote" Oil Moisturizer. *Id.*

As set forth in the accompanying written report of Mr. Patrick Obukowho, an expert in relaxer technology, the Product is dangerous and unsafe, resulting in hair damage, chemical burns, and irritation to the scalp. Rosner Decl., Ex. 1 at ¶ 17. Even Barbara Mitchell, who testified on

---

[1] Plaintiffs' motion is supported by the accompanying declarations of Andrea Clisura ("Clisura Decl."); Rosemary M. Rivas ("Rivas Decl."); and Michael H. Rosner ("Rosner Decl.") and the exhibits attached thereto.

[2] The packaging instructions state that the Product works in 13 minutes for medium/normal hair, and in 15 minutes for super/coarse hair. Rosner Decl., Ex. 22. Previously, Defendants represented the recommended processing time as 15 minutes for fine/color-treated hair; 18 minutes for medium/normal hair; and 20 minutes for super/coarse hair. Rosner Decl., Ex. 11.

behalf of L'Oreal, thought as much. Rivas Decl., Ex. 11 ("The adverse effects could be due to processing time or to the formula itself.").

According to Mr. Obukowho, the Relaxer Cream was unfortunately based on the mixture of the solvents hexylene glycol and butylene glycol with lithium hydroxide, which Defendants call "pro-solvent" technology. *Id.* Solvents such as hexylene glycol and butylene glycol are not appropriate in hair relaxers because they increase penetration of aggressive hydrophilic active relaxing ingredients such as lithium hydroxide into the hair, resulting in excessive weakening of the hair, hair breakage and loss. *Id.* Further, these solvents are very dangerous when mixed with lithium hydroxide, resulting in skin damage, such as irritation and burning to the scalp or other skin that the Relaxer Cream touches. *Id.* Additionally, the Relaxer Cream formulation is also incorrectly based on an oil in water emulsion that does not use other ingredients to encourage the simultaneous release of hydrophobic materials to avoid or minimize hair damage and scalp irritation. *Id.* at ¶¶ 52-54. Mr. Obukowho's findings are supported by Defendants' internal communications and studies, showing that the Product caused ███████████████████████ ████████████████. Rosner Decl., Ex. 4, at 155:8-20; Ex. 25.

Further, the Scalp Protector does not create an effective barrier between the Relaxer Cream and the scalp and other skin (*id.* at Ex. 1, at ¶ 19) because it contains problematic ingredients that react with the Relaxer Cream fail to protect the scalp and skin from the harsh causticity of the Relaxer Cream, as demonstrated by testing Mr. Obukowho performed. *Id.* at ¶¶ 66-70.

While each of the Product's five components contain amla oil, the amounts are miniscule and insignificant in the presence of the other ingredients. Rosner Decl., Ex. 1 at ¶ 18. Further, it is well known that natural oils such as amla will turn into soap in the presence of lithium hydroxide, drying the skin and contributing to irritation. *Id.* at ¶¶ 57-58. Additionally, the miniscule quantities

of amla oil in the Product's other components are insufficient to provide any meaningful benefits to hair and reverse the damage caused by the Relaxer Cream. *Id.* at ¶ 59.

**B.     Defendants' Uniform False and Misleading Representations**

Internal marketing studies Defendants conducted show that the words "AMLA OIL" and "NO-LYE" were material and influenced consumers in choosing a relaxer. Rosner Decl., Ex. 23. Specifically, Defendants' consumer testing showed that consumers interpret the phrase "No-Lye" to mean that a product contains no/few chemicals and that it will not be harmful to hair. *Id.*

Despite the Relaxer's unsafe formulation, Defendants designed the Product packaging around the catchphrases "AMLA OIL" and "NO-LYE," knowing that consumers would believe these representations to mean that the product was safe and would benefit their hair. Rosner Decl., Exs. 9-10, 23. From 2012 and continuing to this day, Defendants repeatedly touted the Relaxer as "NO-LYE" in conspicuous lettering on several places of the packaging. *Id.* at Ex. 9. In particular, the front, back, top and left side panels of the packaging stated "NO-LYE" in large letters, next to droplets of golden oil. *Id.*

Defendants also repeatedly and uniformly touted the presence of amla oil in the Product on the front, back, top and left side panels of the packaging, and even incorporated "Amla" into the Product's name. Rosner Decl., Ex. 9. "AMLA OIL" was also placed next to the images of the golden droplets of oil. *Id.* According to the Kit's packaging, amla oil is a "powerful anti-oxidant, rich in vitamins and minerals, and renowned for its natural rejuvenating properties of intense nourishment and conditioning." *Id.* Defendants encouraged consumers to "Experience the LEGENDARY POWER of AMLA OIL!" *Id.* at Ex. 10. Defendants also placed pictures of an African American woman with beautiful, silky and shiny hair on the front, top and left side of the packaging, which, along with the "AMLA OIL" and "NO-LYE" representations created the

impression that use of the Product would result in silky and shiny hair.[3] *Id.* at Ex. 9. Defendants also touted the Product as "Rejuvenating"—which they understood to be "the main word associated with [the Product]" and "perceived as very new and interesting by our consumers (rejuvenation is both 'strength + health')"[4]—despite it being the very opposite.

Internal documents produced in the case, however, show that people within Defendants' claims substantiation department[5] ███████████████████████████. Rosner Decl., Exs. 5-6. ███████████████████ "AMLA LEGEND REJUVENATING RITUAL" ███████ the golden droplets █████████████████████ *Id.*; Ex. 29. They also ███████████████████████████ "powerful anti-oxidant, rich in vitamins and minerals, and renowned for its natural rejuvenating properties of intense nourishment and conditioning." *Id.* at Exs. 10, 17. ████████████████ the statement, "Experience the LEGENDARY POWER OF AMLA OIL!" *Id.* ██████████████████████████████████ ████████████████████████████ went forward with these unsubstantiated claims. *Id.*[6]

### C. Use of the Relaxer Results in Scalp Burning, Irritation, Hair Breakage and Hair Loss—A Fact Long Known to Defendants and Unknown to Consumers

Contrary to the representations and images on the Kit packaging, use of the Product results in, at minimum, scalp irritation and burning, weakened dry and brittle hair; and at worst, hair loss.

---

[3] Plaintiffs challenge the following representations: "No-Lye," "Amla Oil," "Scalp Protector," and "rejuvenating properties of intense nourishment and conditioning" ("Challenged Representations"). The Challenged Representations currently appear on the Kit and have appeared on it since launch. Rosner Decl., Exs. 9-10; *Id.* at Ex. 4, at 135-137.

[4] Rosner Decl. Ex. 27; *see also* Ex. 7 (" ███████████████████████████████ ████ ").

[5] The claims substantiation department is responsible for approving all marketing claims on a product. Rosner Decl., Ex. 4, at 22.

[6] L'Oréal admitted at deposition that it is standard practice for the company to launch products without substantiation, as was the case here. Rosner Decl., Ex. 4 at 44-46.

As a dermatologist for Defendants noted, consumers complained of these types of problems even when following instructions. Rosner Decl., Ex. 13. Although all relaxers involve chemical and biological changes to hair, with effective scalp protection, it produces the desired result of straightening hair while minimizing hair damage, skin or scalp irritation, avoiding burning, severe hair weakness, and breakage or hair loss. *Id.* at Ex. 1 at ¶ 72. Defendants have known for some time that these results occur even when the Product is used as directed, given the number and timing of the complaints they have received. Rivas Decl., Ex. 2.

For example, in Defendants' 2013 "Amla early trier study" (performed after the Product hit the market), the Product testers reported "disappointment about breakage and damage to hair." Rosner Decl., Ex. 21. Moreover, this belated study showed that the percentage of Product testers adopting the Product as their most often used brand was "low" based on the "irritation or burning sensation[.]" *Id.*

In January 2014, Defendants' employees discussed "Amla Relaxer Consumer Issues," and noted that "Hair breakage has been an issue since launch." Rivas Decl., Ex. 5. Instead of discontinuing the Product and removing it from store shelves to protect consumers from further harm, the marketing department tried to determine "how best to position the relaxer as 'faster time with better results' to help consumers have a more positive spin on the scalp burning issue." *Id*. at Ex. 6.

Issued in February 2015, Defendants' 2014 Executive Report identified ███████████ as one of the ██████████████████████████████████ Rosner Decl., Exs. 18, 20, 31. Defendants, however, continued to sell the Product with its uniformly, unsafe formulation. After the initial Product launch, rather than change the formulation, or remove the Product from the market so that consumers would no longer suffer harm, Defendants instead removed the

following marketing claims from the Product's packaging: "superior respect of hair fiber integrity," "Refills to reveal visibly fuller, silkier hair," "Anti-Breakage," "Anti-Dryness," and "for all hair types." *Id.* at Ex. 17. Defendants, however, continued to make the Challenged Representations on the Product packaging.

In July 2015, Defendants' employees flippantly remarked in an email that a ███████ ████████████████████████████████████████████████████████ Rosner Decl., Ex. 3. While that same month Defendants' employees discussed reformulating the Product due to "breakage," they did not. *Id.* at Ex. 16. One executive stated that she would "love to discontinue" but that they were "trying to manage it down slowly," thus putting the needs of the Company first, to the great detriment of consumers. *Id.* at Ex. 15.

Despite the problems with the Product since its launch and to the present,[7] it remains for sale on the Internet and store shelves today.[8] Hundreds of consumers have complained to Defendants and on the Internet. Samples of the complaints are attached as Exhibits 1-2 to the accompanying Rivas Declaration. *See also* Rosner Decl., Ex. 33 ("████████████████████ ████████████████████████████████████████████████████████ ███████"). The problems with the Product were a worldwide phenomenon, with "a lot of consumer complaints regarding hair breakage from Amla Relaxer" in the U.S., South Africa and France. Rosner Decl., Ex. 14[9]; Rivas Decl., Ex. 10 ("In South Africa we too have had a significant

---

[7]  As recently as May 31, 2017, Defendants' employee, Barbara Mitchell, acknowledged that the "Prosolvent is [the] only technology where we have large amounts of consumer complaints for irritation." Rosner Decl., Ex. 4, at 275-276.

[8]  *See, e.g.,* https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B 1KM1XM/ref=sr_1_1_a_it?ie=UTF8&qid=1502426689&sr=8-1&keywords=amla+relaxer (last visited August 10, 2017).

[9]  *See also* Rosner Decl., Ex. 12 ("There [were] quite a lot of consumers['] complaints in France with Amla legend relaxers in terms of scalp irritation [and] hair damage."); Ex. 8 ("Amla in U.S. [] is normally the most irritating to scalp.").

number of burn cases related to the AMLA relaxer.").

Defendants even highlighted similar complaints in their Executive Reports, where they noted ████████████████████████. Rosner Decl., Ex. 2. Still, no meaningful action was taken to reformulate, stop selling the Product, or remove it from store shelves. And Defendants now are no longer even considering reformulation. *Id.* at Ex. 4, at 248-250.

## III.     THE LEGAL STANDARDS FOR CLASS CERTIFICATION[10]

The class action device was not designed "solely as a means for assuring legal assistance in the vindication of small claims, but, rather, to achieve the economies of time, effort, and expense." *See Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 196 (6th Cir. 1988); *Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558 (S.D. Fla. 1973), *aff'd without opinion*, 507 F.2d 1278 (5th Cir. 1975); *see also* Fed. R. Civ. P. 1.

To obtain class certification, Plaintiffs must demonstrate by a preponderance of the evidence that the proposed class action meets each of the four requirements of Rule 23(a), and also satisfies at least one of the requirements of Rule 23(b). *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014). Courts may also certify a class with respect to particular issues. *See* Fed. R. Civ. P. 23(c)(4).

Courts must conduct a "rigorous analysis" to determine whether the Rule 23 requirements are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). In making these determinations, however, courts "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Balderramo v. Go N.Y. Tours Inc.*, No. 15-cv-2326 (ER), 2017 WL 2819863, at *2

---

[10]  Emphasis added and internal quotations, modifications, and citations omitted unless otherwise stated.

(S.D.N.Y. June 28, 2017) (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Moreover, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (quoting *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009)).

Consumer protection claims are generally well-suited for class certification. *See, e.g.*, Essay, *The Role of Judges in a Government of, by, and for the People: Notes for the Fifty–Eighth Cardozo Lecture*, 30 Cardozo L. Rev. 1, 177 (2008) (class actions are "essential" for "large groups of people who need to consolidate their power in the courts in order to protect their rights, as well as for the industry, which needs to stop almost endless resource-sapping suits"). Additionally, the Second Circuit has recognized that fraud claims based on uniform misrepresentations to all class members "are appropriate subjects for class certification" because, uniform misrepresentations create "no need for a series of mini-trials." *In re US Foodserv. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)). Finally, because a court can alter or amend a class certification order at any point before final judgment, "when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 237 (S.D.N.Y. 2006) (quoting *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999)).

## IV.   PLAINTIFFS MEET THE REQUIREMENTS FOR CLASS CERTIFICATION

Pursuant to Rule 23(b)(3), Plaintiffs and proposed Class Representatives Tiffany Raines,

Sandi Turnipseed, Jennifer Sanon, and Jasmin Hervey[11] seek certification of their claims for fraud

and negligent misrepresentation on behalf of a national class defined as: [12]

> **All persons who bought one or more of the Products in the United States**
> **from December 1, 2012 to the present ("National Class").**

Plaintiffs and Proposed Class Representatives Turnipseed, Sanon, and Hervey also seek

certification of the claims for violations of New York's General Business Law § 349 and for unjust

enrichment on behalf of a New York Subclass defined as follows:

> **All persons who bought one or more of the Products in New York from**
> **August 19, 2013 to the present ("New York Subclass").**

Plaintiff and Proposed Class Representative Raines seeks certification of the claims for

violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204

("FDUTPA") and for unjust enrichment on behalf of a Florida Subclass defined as follows:

> **All persons who bought one or more of the Products in Florida from**
> **December 1, 2012 to the present ("Florida Subclass").**

Plaintiffs and Proposed Class Representatives Raines, Turnipseed, Sanon, and Hervey seek

certification of the express warranty claims on behalf of a multistate class defined as follows:

> **All persons who bought one or more of the Products in Alaska, California,**
> **Colorado, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska,**
> **New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma,**
> **Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West**
> **Virginia, and Wyoming from December 1, 2012 to the present ("Multistate**
> **Class").**

---

[11]  Plaintiffs' motion to join Ms. Jasmin Hervey as a named plaintiff and proposed class representative is pending. For convenience, Ms. Hervey is referred to herein as a plaintiff. Plaintiffs Raines, Turnipseed, Sanon, and Hervey do not seek damages for personal injuries.

[12]  Excluded from the Classes and Subclasses are Defendants, the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, any entity in which Defendants have or had a controlling interest, and any judges and their staff to which this case is assigned.

Pursuant to Rule 23(b)(2), Plaintiffs and Proposed Class Representatives Raines, Turnipseed, Sanon, and Hervey seek certification of their injunctive and/or declaratory relief claims for violations of the FDUTPA and NY Gen. Bus. Law § 349 on behalf of the Florida Subclass and New York Subclass.

Pursuant to Rule 23(c)(4), Plaintiffs and Proposed Class Representatives Kishta Finch, Nicole Coleman, Dorothy Riles, Lavette Jacobs, and Terri Oravillo seek certification to determine liability on the negligence and strict liability claims on behalf of a class defined as:

> **All persons who bought one or more of the Products in Illinois, Kentucky, Florida, California, Missouri and Pennsylvania from December 1, 2012 to the present ("Non-Economic Injury Class").**

As Plaintiffs explain in further detail below, they meet the class certification requirements.

### A. The National Class, New York and Florida Subclasses, and Multistate Class (For Economic Injuries) Meet the Requirements of Rule 23(a)

There are four listed prerequisites under Rule 23(a) for certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Additionally, some courts recognize a fifth pre-condition to class certification—the ascertainability requirement. *See Stinson v. City of N.Y.*, 282 F.R.D. 360, 373 (S.D.N.Y. 2012).

### 1. The Classes and Subclasses Satisfy the Numerosity Requirement

In the Second Circuit, there is a presumption of numerosity when the class exceeds 40 people. *Ebin*, 297 F.R.D. at 565 (referring to *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Here, retail sales during the class period were approximately ██ million. Rosner Decl., Ex. 19. Since the Product sells for approximately $10, there are undoubtedly more than forty purchasers.

### 2. Commonality Is Satisfied

Commonality is present where "there are questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2). However, "[c]ommonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Stinson*, 282 F.R.D. at 369. Further, commonality can be met where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). Indeed, the Supreme Court instructed that Rule 23(a)(2) can be satisfied where "[e]ven a single question of law or fact" is common to the members of the class. *Wal-Mart Stores, Inc.*, 564 U.S. at 369.

With regard to the National Class and New York and Florida Subclasses, common questions in this case include whether Defendants made fraudulent and negligent misrepresentations about the Product, and whether as to the New York Subclass, Defendants' conduct violates New York's General Business Law § 349. A common question as to the Florida Subclass is whether Defendants' practices violated the FDUTPA. Further, as to the Multistate Class, a common question is whether Defendants breached the express warranty. Accordingly, the commonality requirement is met.

### 3. Plaintiffs' Claims Are Typical

The typicality requirement is met where the named plaintiffs' claims are "typical" of the class. Fed. R. Civ. P. 23(a)(3). This requirement is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Balderramo*,

2017 WL 2819863, at *3 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)). Moreover, courts in this Circuit have held that "the typicality requirement is not demanding." *See Pub. Emples. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 107 (S.D.N.Y. 2011).

Here, Plaintiffs' claims are typical of the Class members' claims because they arise out of the same course of conduct by Defendants and are based on the same legal theories. Each Kit displayed the Challenged Representations which form the basis of the fraud, negligent misrepresentations, warranty, and New York and Florida consumer protection claims. Moreover, the Relaxer Cream had the same formulation from launch to the present. Rosner Decl., Ex. 4, at 14. Plaintiffs have been injured in the same manner as the proposed Class members in that they all bought the Product that could not and did not work as advertised. Plaintiffs' claims are therefore typical of the claims of the National Class, the New York and Florida Subclasses, and the Multistate Class.

### 4. Plaintiffs Will Adequately Represent the Proposed Class Members

The adequacy requirement is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d at 35. A finding that a proposed class representative satisfies the typicality inquiry constitutes "strong evidence that [its] interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiff['s] claims will vindicate those of the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

### a. Plaintiffs' Interests Do Not Conflict with the Class Or Subclasses

Neither Plaintiffs nor their counsel have any interest antagonistic to absent Class members.

Plaintiffs, like each absent Class member, have a strong interest in proving Defendants' common course of conduct, establishing their unlawfulness, demonstrating falsity, and obtaining redress.

Plaintiffs have demonstrated their commitment to pursue these claims on behalf of absent class members. Clisura Decl., ¶¶ 3-12. All have reviewed the complaints; responded to extensive written discovery requests; and have sat for depositions.[13] *Id.* at ¶¶ 5-7.

### b. Plaintiffs' Counsel Are Qualified

Interim Counsel Levi & Korsinsky, LLP and Geragos & Geragos, APC, are skilled and experienced in prosecuting claims on behalf of defrauded consumers, including claims against product manufacturers. The Court has already appointed them as Interim Counsel, finding that they are experienced and competent to handle the prosecution of this matter. *See Memorandum Order*, Dkt. No. 88. They have vigorously prosecuted Plaintiffs' claims and should be appointed as Class Counsel.

### B. The Non-Economic Injury Class Meets Rule 23(a)'s Requirements

The Non-Economic Injury Class meets the numerosity requirement under Rule 23(a)(1) because more than 40 people have suffered physical injuries as reflected in the multitude of consumer complaints posted online and submitted to Defendants. Rivas Decl., Exs. 1-2. Numerosity here is thus met.

The Non-Economic Injury Class also meets the commonality requirement under Rule 23(a)(2) because all proposed Class members assert claims with the same issues. For example, as to the negligence claim, common issues include whether Defendants had a duty to safely formulate and adequately test the Product and its components before placing into the market, and whether Defendants breached that duty. As to the strict liability claims, the common issues

---

[13] Ms. Hervey is prepared to participate in discovery, including sitting for her deposition, as well as testifying at trial. Rivas Decl., Ex. 7 at ¶ 8.

include whether the Product was unreasonably unsafe for its intended use. Because all members of the Non-Economic Injury Class share common issues, the commonality requirement is met.

The Non-Economic Injury Class meets typicality under Rule 23(a)(3) because the claims of Plaintiffs Riles, Jacobs, Oravillo, Finch, and Coleman arise from the same course of events as the other members of the Class. Moreover, the legal theories of all members of the Non-Economic Injury Class are the same: that Defendants negligently formulated the Product, which was not reasonably safe for its intended use. Thus, because Plaintiffs and the members of the Non-Economic Injury Class have claims that arise out of the same conduct and are based on the same legal theories, typicality is met.

Lastly, Plaintiffs will adequately represent the Non-Economic Injury Class under Rule 23(a)(4) as they have a strong interest in securing a finding of liability for the unnamed members. Additionally, they have all reviewed the complaints and other litigation documents, responded to discovery, produced documents, and traveled and sat for depositions. Clisura Decl., ¶¶ 5-7. Similarly, Interim Counsel are qualified, as described above, to serve as Class Counsel.

### C. Each of the Classes and Subclasses Is Objectively Ascertainable

The Second Circuit recently clarified the implied requirement of ascertainability for purposes of class certification. It held that a class is ascertainable if it is defined using objective criteria that establish membership with definite boundaries. *In re Petrobras Sec. Litig.*, No. 16-cv-1914, 2017 WL 2883874, at *8 (2d Cir. July 7, 2017). It expressly declined to adopt the heightened theory that ascertainability also requires a showing of administrative feasibility at this stage. *Id.* at *9. Furthermore, in its reasoning, the Second Circuit referenced this Court's decision in *Ebin* and found that this Court had properly determined the class to be ascertainable because the requirement "is designed only to prevent the certification of a class whose membership is truly indeterminable." *Id.* at *10 (quoting *Ebin*, 297 F.R.D. at 567).

Ascertainability is met here. The Classes and Subclasses consist of those who bought the Relaxer; there is nothing subjective about the class definitions—a person either purchased the Product or did not. Thus, the Classes and Subclasses are sufficiently definite. To establish membership, a person may: 1) provide a claim form and receipt; 2) provide the serial number on the product box; or 3) submit a sworn affidavit identifying their purchase of the Product. Indeed, this Court has accepted these forms of proof of class membership in a similar context. *Ebin*, 297 F.R.D. at 567. Thus, because members of the Classes can be objectively identified, the implied ascertainability requirement is satisfied.

### D. The National Class, New York and Florida Subclasses, and Multistate Class Satisfy Rule 23(b)(3)

Rule 23(b)(3) provides for class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

### 1. Common Questions of Law or Fact Predominate

Predominance is met if: (1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof. *See In re Petrobras Sec.*, 2017 WL 2883874, at *13. While the predominance inquiry is more demanding than the commonality determination required by Rule 23(a), predominance does not require a plaintiff to show that there are no individual issues. *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009). The court must only find that the issues subject to generalized proof outweigh those issues that are subject to individualized proof. *See In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006). Further, predominance under Rule 23(b)(3) requires only "a showing that questions common to the class

predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Here, common issues overwhelmingly predominate over any individual issues.

> **a.** **The Elements of Fraud and Negligent Misrepresentation Can Be Established Through Common Proofs**

Plaintiffs allege claims for fraud and negligent misrepresentation on behalf of the National Class. The Second Circuit has held that fraud claims based on uniform misrepresentations to all members of a class "are appropriate subjects for class certification." *In re US Foodserv. Pricing Litig.*, 729 F.3d at 118 (quoting *Moore*, 306 F.3d at 1253); *see also Ebin*, 297 F.R.D. 561.

This Court and others certified national classes for fraud and/or negligent misrepresentation in consumer actions alleging uniform misrepresentations, finding that common issues predominate, as Plaintiffs have shown here. *See, e.g.*, *Ebin*, 297 F.R.D. at 569 (certifying a national class for fraud and negligent misrepresentation); *Hart v. BHH, LCC*, No. 15-cv-4804, 2017 WL 2912519, at * 8 (S.D.N.Y. July 7, 2017) (same); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 141 (S.D.N.Y. 2014) (certifying a national class for fraud).[14]

Nor do damages present any individual issues. Plaintiffs, on behalf of themselves and the proposed National Class, seek a full refund. A full refund is appropriate in this case and consistent with Plaintiffs' theory of liability—that the Product does not provide the advertised benefits and is actually harmful to hair and scalp. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 412-14 (S.D.N.Y. 2015) (finding the full refund model appropriate because plaintiffs received no benefit from the product). Moreover, Plaintiffs' theory complies with the Supreme Court's requirement

---

[14] The court in *Ebin* determined that variations in states' fraud and negligent misrepresentation laws did not preclude a finding of predominance of common issues for a national class. *Ebin*, 297 F.R.D. at 570. The court in *Rodriguez* also found that a national fraud class was appropriate for certification. *Rodriguez*, 300 F.R.D. at 141.

that at class certification "any model supporting a plaintiff's damages case [is] consistent with its liability case," i.e., that the model "measure[s] only those damages attributable to that theory" of liability. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1429 (2013). Courts routinely find this to be true in cases where plaintiffs have identical theories of liability and damage models. *See, e.g.*, *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 523-24 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493 (2016) (finding that plaintiffs' full refund damage model satisfied *Comcast* when the plaintiffs alleged the product worked for no one); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 670-71 (C.D. Cal. 2014) (holding full restitution theory satisfies *Comcast* when plaintiffs' theory of liability "is that the products are *entirely* ineffective") (emphasis in original); *Ortega v. Nat. Balance, Inc*., 300 F.R.D. 422, 430 (C.D. Cal. 2014). Thus, the fraud and negligent misrepresentation claims on behalf of the National Class should be certified.

### b. The Elements of the New York Consumer Protection Claims Can Be Established with Common Proof

Plaintiffs Turnipseed, Sanon, and Hervey allege violations of New York Gen. Bus. Law ("GBL") § 349 on behalf of the New York Subclass. The Second Circuit has held that "[t]o state a claim under § 349, a plaintiff must allege that: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp*., 574 F.3d 64, 74 (2d Cir. 2009). GBL § 349 does not require proof that any consumer relied on a misrepresentation. *See Pelman v. McDonald's Corp*., 396 F.3d 508, 511 (2d Cir. 2005). Rather, "[d]eceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." *Spagnola*, 574 F.3d at 74; *see also Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005).

The Section 349 claim can be proven with the same common proofs that will be used to adjudicate the fraud and negligent misrepresentation claims and thus should be certified under

Rule 23(b)(3). *See Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 895 N.Y.S.2d 580 (App. Div. 2010) (certifying class under GBL § 349); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 480-83 (C.D. Cal. 2012) (same). Here, every buyer was presented with the same materially false and misleading representations that the Product is "No-Lye," contains a "Scalp Protector" and amla oil and is rejuvenating, nourishing, and conditioning the hair. Whether these representations are false or misleading turns on generalized evidence. Nor are there any individual issues with respect to showing the availability of statutory damages pursuant to GBL § 349(h) ("any person who has been injured by reason of any violation of this section may bring an action . . . to recover his actual damages or fifty dollars, whichever is greater[.]"). Since Plaintiffs have shown an injury, they and members of the Subclass are also entitled to the statutory damages of $50 each.

### c. The Elements of the Florida Consumer Protection Claim Can Be Established with Common Proof

Plaintiff Raines and members of the Florida Subclass may establish a claim under the FDUTPA by submitting common proof that Defendants' representations about the Relaxer would deceive an objectively reasonable consumer. Courts have certified FDUPTA claims where violations can be shown using common proof, such as here. *See, e.g.*, *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 697-98 (S.D. Fla. 2010). Accordingly, this claim meets the predominance requirement.

### d. The Elements of the New York and Florida Unjust Enrichment Claims Can Be Established with Common Proof

Plaintiffs Raines, Turnipseed, Sanon, and Hervey allege claims for unjust enrichment on behalf of the New York and Florida Subclasses. The elements to prove such claims are similar. *See, e.g.*, *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006); *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011).

Plaintiffs, on behalf of their respective Subclasses, can prove unjust enrichment without individual evidence—namely by offering the same common proofs used to prove their consumer protection causes of action. Indeed, courts routinely certify claims for unjust enrichment where the illegal behavior is uniform and can be proven using the same common proofs to establish other causes of action. *See, e.g.*, *Rodriguez*, 300 F.R.D. at 147-48; *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 436-37 (S.D.N.Y. 2009); *Cnty. of Monroe, Florida v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010); *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 521 (S.D. Fla. 2013).

### e. The Elements of the Breach of Warranty Claims Can Be Established with Common Proof

Plaintiffs Turnipseed, Sanon, and Hervey seek to certify a breach of express warranty claim on behalf of the Multistate Class (or New York Subclass). As the Court noted in its motion to dismiss, with regards to an express warranty claim, "the requirement of reliance is subsumed into the question of whether the warranty was part of the basis of the bargain, and there is a presumption that a seller's affirmations go to the basis of the bargain." *See Memorandum Order*, Dkt. No. 98 at 23. Moreover, "affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." *Id.* at 24 (quoting U.C.C. § 2-313 Cmt. 3). Thus, a showing of reliance is not needed as it is presumed here. *See, e.g.*, *Hart*, 2017 WL 2912519, at *8 ("For product labeling cases such as this, reliance and causation are generally established through the presumption that a customer would not have purchased the product for any other reason than the advertised one.").

This claim is susceptible to common proofs, such as Defendants' misrepresentations and the Product's unsafe formulation, among other things. Certification of the proposed Multistate Class for breach of express warranty is also appropriate because the applicable state laws do not

require privity and otherwise do not differ materially. *See Hart*, 2017 WL 2912519, at *8 (certifying multistate class for breach of express warranty); Rivas Decl., Ex. 8 (chart showing privity requirements by state).

## 2. Class Litigation Is Superior to Other Methods of Adjudication

A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The matters pertinent to such a finding include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Plaintiffs Raines, Turnipseed, Sanon, and Hervey seek certification pursuant to Rule 23(b)(3) for small monetary claims. Where proceeding individually would be prohibitive due to the minimal recovery, "the class action device is frequently superior to individual actions." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Here, the amount of money that each Class member of the National Class and Subclasses is suing for is far too minimal to feasibly bring individual suits. The cost of litigation would far exceed any recovery to an individual class member with economic injuries considering the cost of the Product is roughly $10. Thus, superiority is met.

## E. The New York and Florida Subclasses Satisfy Rule 23(b)(2)

Rule 23(b)(2) permits class certification where the party against whom relief is sought "has acted or refused to act on grounds that apply generally to the class, so that injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Such certification should occur only "where a single injunction would provide relief to each member of the class." *Sykes v.*

*Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360.

Plaintiffs Raines, Turnipseed, Sanon, and Hervey, on behalf of themselves and the New York and Florida Subclasses, complain of standard and uniform deceptive practices that are generally applicable to the Class members as a whole. Despite a multitude of complaints from consumers and internal plans to discontinue the Product, the Kit with the Challenged Representations remains on store shelves. Both New York's GBL § 349 and the FDUTPA allow consumers to bring an action to enjoin unlawful conduct and/or for a declaratory judgment. *See* GBL § 349(h); FDUTPA § 501.211(2). Thus, Rule 23(b)(2) certification of the injunctive and declaratory relief claims is appropriate. *See Kurtz v. Kimberly-Clark Corp.*, No. 14-cv-1142 et al., 2017 WL 1155398, at *54 (E.D.N.Y. Mar. 27, 2017); *Jermyn*, 256 F.R.D. at 434.

Plaintiffs request that the Court enjoin Defendants from: (1) engaging in false and misleading advertising; (2) selling the Kit as currently formulated; and (3) placing products on the market without claim substantiation. Further, Plaintiffs seek a declaratory judgment that Defendants' Kits had false and misleading representations; and that the Kit causes hair and scalp damage. Since the requested injunctive and declaratory relief is indivisible and benefits all Class members, Rule 23(b)(2) certification is appropriate.

### F.     The Non-Economic Injury Class Satisfies Rule 23(c)(4)

Fed. R. Civ. P. 23(c)(4) provides that, "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Here, Plaintiffs Finch, Riles, Coleman, Jacobs, and Oravillo seek to establish Defendants' liability for negligence and strict

liability on a class-wide basis, with "separate hearings to determine . . . the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) . . . ." *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (citing Advisory Committee Notes to 1966 Amendment of Rule 23(b)(3); *Pella Corp. v. Saltzman,* 606 F.3d 391, 393-94 (7th Cir. 2010) (per curiam)). As the Seventh Circuit stated, Rule 23(c)(4) certification "will often be the sensible way to proceed." *Butler*, 727 F.3d at 800. Moreover, the Second Circuit specifically encourages its district courts to "take full advantage [Rule 23(c)(4)] to certify separate issues in order . . . to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies." *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 167 (2d Cir. 2001). This Court should do so here as it would dispose of key issues in dispute and thus materially advance the Non-Economic Injury Class' claims.

Individual issues will not predominate over the common issue of liability. For example, to prove liability for negligence, Plaintiffs must establish: (1) a duty; (2) breach of that duty; and (3) injury to the plaintiff as a result thereof. *See, e.g.*, *Valenti v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327-28 (S.D.N.Y. 2011). Plaintiffs can prove these elements with common proof, including, the Relaxer Cream's formulation and expert testimony from Mr. Obukowho, who concluded that the Relaxer Cream is dangerous and results in hair loss and scalp damage. Defendants will likely argue that causation is an individual issue that will predominate. As the court in *Sterling* explained, however, causation can be divided into two separate stages. *See Sterling*, 855 F.2d at 1200. First, Plaintiffs Finch, Riles, Coleman, Jacobs, and Oravillo as representatives of the Non-Economic Injury Class, will establish generic causation—whether Defendants' Relaxer had the capacity to cause the harm alleged. *See id.* If Plaintiffs are successful, the next stage would be to establish individual causation in separate proceedings. In other words, it will be the responsibility of each

member of the Non-Economic Injury Class to show that his or her specific injuries, such as scalp injuries and hair loss, were proximately caused by the use of the Relaxer. *See id.* Courts have the discretion to certify a class for liability alone followed by individual assessments of damages and causation. *See, e.g.*, *Pella Corp.*, 606 F.3d at 394; *Arreola v. Godinez*, 546 F.3d 788, 799-800 (7th Cir. 2008); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

Similarly, Plaintiffs' claims for strict liability can be established using common proof. To establish strict liability, Plaintiffs must show an injury, that the defendant produced a product that was not "reasonably safe" for its intended use, and that the product's defect was "the proximate cause of the injury." *See, e.g.*, *Caronia v. Philip Morris USA, Inc.*, No. 06-cv-00224 (SBA) (SMG), 2010 WL 520558, at *4 (E.D.N.Y. Feb. 11, 2010). Here, Plaintiffs can establish with common proofs that the Relaxer Cream was unsafe when it left Defendants' hands. Plaintiffs can also show injury with common proof. Individual damages, on the other hand, can be proven through separate proceedings. Accordingly, certification of liability issues is appropriate pursuant to Rule 23(c)(4). Indeed, certification is particularly appropriate here given that the personal injuries suffered by Plaintiffs and many other African American women are significant—not only painful and embarrassing, but also often resulting in hundreds of dollars or more in out-of-pocket costs that generally do not rise to the level of justifying the costs of individual personal injury lawsuits. The vast majority of women personally injured by the Product will receive no relief at all if a Rule 23(c)(4) issue class is not certified.

## V.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant this motion.

Dated: August 11, 2017                    **LEVI & KORSINSKY, LLP**


By:    *s/ Rosemary M. Rivas*
  Rosemary M. Rivas

Rosemary M. Rivas (*pro hac vice*)
rrivas@zlk.com
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Michael H. Rosner (MR1034)
mrosner@zlk.com
Andrea Clisura (AC1313)
aclisura@zlk.com
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

Lori G. Feldman (LF3478)
**GERAGOS & GERAGOS APC**
7 West 24th Street
New York, NY 10010
Telephone: (917) 388-3121

Mark J. Geragos (*pro hac vice*)
geragos@geragos.com
Ben J. Meiselas (*pro hac vice*)
meiselas@geragos.com
**GERAGOS & GERAGOS APC**
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255

*Co-Lead Interim Class Counsel*