UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x
                                                     :
                                                     :     Consolidated Case No. 1:16-cv-06593 (JSR)
In re: AMLA LITIGATION                               :
                                                     :
                                                     :
                                                     :
                                                     :
                                                     :
——————————————————— x

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS
<u>REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

I.  A FULL REFUND IS APPROPRIATE HERE....................................................................1

II. ANY VARIATIONS IN THE LAWS OF NEGLIGENT
MISREPRESENTATION AND EXPRESS WARRANTY DO NOT DEFEAT
PREDOMINANCE................................................................................................4

    A.  The Requirements for Proving a Claim of Negligent Misrepresentation
Are Substantially Similar Under the Laws of the Various States...........................4

    B.  Common Issues Predominate for the 25 State Multistate Class ............................7

III. JUSTICE REQUIRES CERTIFICATION OF THE RULE 23(C)(4) ISSUE
CLASS ...............................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anwar v. Fairfield Greenwich Ltd.*,
   826 F. Supp. 2d 578 (S.D.N.Y. 2011)................................................................. 5

*Avon Hardware Co. v. Ace Hardware Corp.*,
   376 Ill. Dec. 348, 998 N.E.2d 1281 (App. Ct. 1st Dist. 2013)........................... 5

*Barden v. Hurd Millwork Co., Inc.*,
   249 F.R.D. 316 (E.D. Wis. 2008) ....................................................................... 9

*Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP*,
   623 F. Supp. 2d 504 (S.D.N.Y. 2009)................................................................. 4

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).......................................................................................... 1, 2

*Delarosa v. Boiron, Inc.*,
   275 F.R.D. 582 (C.D. Cal. 2011) ........................................................................ 4

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................ 8

*Galoski v. Applica Consumer Prods.*,
   309 F.R.D. 419 (N.D. Ohio 2015) ...................................................................... 9

*Grant Thornton LLP v. Prospect High Income Fund*,
   314 S.W.3d 913 (Tex. 2010)............................................................................... 5

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) .............................................................................. 9

*Hart v. BHH, LCC*,
   No. 15-cv-4804, 2017 WL 2912519 (S.D.N.Y. July 7, 2017)............................ 8

*In re Crazy Eddie Sec. Litig.*,
   135 F.R.D. 39 (E.D.N.Y. 1991) .......................................................................... 7

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ..................................................................... 1, 2

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013)............................................................................ 6, 8

*Jaffe v. Bank of Am., N.A.*,
    667 F. Supp. 2d 1299 (S.D. Fl. 2009) .............................................................. 5

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y. 1993) ............................................................... 7, 8

*Mullins v. Premier Nutrition Corp.*,
    No. 13-cv-1271, 2016 WL 1535057 (N.D. Cal. April 15, 2016)........................ 3

*Petersen v. Allstate Indem. Co.*,
    281 F.R.D. 413 (C.D. Cal. 2012) ...................................................................... 5

*Philips v. Ford Motor Co.*,
    No. 14-cv-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) ........................... 2

*Rikos v. P&G*,
    799 F.3d 497 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493 (2016)................................ 4

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ...................................................................... 6

*Rodriguez v. Lab. Corp. of Am. Holdings*,
    13 F. Supp. 3d 121 (D.D.C. 2014) ................................................................... 5

*Steigerwald v. BHH, LLC*,
    No. 1:15 CV 741, 2016 WL 695424 (N.D. Ohio Feb. 22, 2016) ................................. 7, 8

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ....................................................................... 7

*Suchanek v. Sturm Foods, Inc. & Treehouse Foods, Inc.*,
    No. 11-cv-565, 2017 WL 3704206 (S.D. Ill. Aug. 28, 2017)........................................ 2, 3

**OTHER AUTHORITIES**

18 *Moore's Federal Practice* § 131.40[3][e][iii] (2002) ............................................................. 9

**INTRODUCTION**

Plaintiffs respectfully submit this supplemental memorandum to address certain points raised during the September 13, 2017 hearing on Plaintiffs' motion for class certification (the "Motion"), relating to (i) Plaintiffs' full-refund damages model; (ii) certification of the national class for negligent misrepresentation and multistate class for express warranty; and (iii) "claims splitting" and the related question of whether certification of a Rule 23(c)(4) issue class—which is necessary to do substantial justice for most consumers with personal injuries—is appropriate in this case.

**ARGUMENT**

**I.      A FULL REFUND IS APPROPRIATE HERE**

Plaintiffs' expert's testimony and consumer evidence show that if consumers knew they were getting a dangerous hair relaxer, they would not have purchased the Product. Plaintiffs' position is that the Product is worthless as advertised—as a safe and nourishing relaxer—as it did not nourish hair, and is incapable of doing so as a result of its uniformly caustic nature. To the contrary, it is an unsafe product that causes baldness, breakage and burns. Thus, Plaintiffs' theory of liability—that the Product uniformly fails of its essential purpose as a safe and nourishing relaxer—is consistent with their theory of damages based upon the full refund model. That consistency between liability and damages comports with the primary teaching of *Comcast* which is that "any model supporting a plaintiff's damages case must be consistent with its liability case," *i.e.*, that the model "measure only those damages attributable to that theory" of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).[1]

---

[1] In *In re Scotts EZ Seed Litig.,* 304 F.R.D. 397, 408 (S.D.N.Y. 2015), cited by Defendants (*see* Hr'g Tr. at 33 attached hereto as Exhibit A), the court accepted the full refund model as consistent with the plaintiffs' theory of the case that the EZ Seed product was worthless. The court observed,

The applicability of the full refund model is appropriate where, as here, consumers would not have purchased a product had they known that it was not as advertised. This is made plain by the recent decision *Suchanek v. Sturm Foods, Inc. & Treehouse Foods, Inc.*, No. 11-cv-565, 2017 WL 3704206 (S.D. Ill. Aug. 28, 2017), where the court distinguished between cases where consumers ***would still have purchased*** a product and cases where consumers ***would not*** have done so, and explained why a full refund is often rejected for the former:

> The usual story in these cases is that people purchased and consumed the product (often repeatedly) and were generally satisfied until they later realized that the product was missing the particular premium quality advertised on the label . . . . [C]ourts have held that the full refund model is not appropriate in these cases, because the model fails to take into account that consumers still received some benefit when they consumed the product—even though it did not have the advertised premium quality—and it also fails to take into account that consumers may have still purchased the product had they known the truth about the product.

*Id.* at *5. The *Suchanek* court refused to decertify the class or strike the expert testimony supporting the full refund model, noting that the evidence suggested that the deceptive packaging was the driving force behind every consumer's purchase. "While consumers may have ultimately chosen to buy GSC because they wanted to try something new or because of its cheaper price," the court

---

"whether plaintiffs are entitled to any damages under this theory depends on their ability to prove EZ Seed does not grow grass at all. If plaintiffs cannot prove EZ Seed was defective for every single customer, plaintiffs cannot recover the full purchase price of EZ Seed." *Id.* at 412 n.9. No language regarding a "single blade of grass" appears in the decision, but even if it did, it would be inapplicable here, where Plaintiffs' primary theory is safety-based. Here, because of Defendants' unsafe formula, the Product was defective for every single purchaser.

Likewise, Defendants' reference (*see* Hr'g Tr. at 26-27) to *Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016), is inapposite. There, the court rejected the full refund model because plaintiff's expert relied on a model of damages that differed from the full refund model. *Id.* at *20-22. Plaintiff's expert stated that the average consumer would discount the price based on expected "utility" and "disutility," not that the consumer would have paid zero if it knew the danger of the product. *See id.*; *see also id.* at *22 (distinguishing "the type of defect that is visible to consumers and about which consumers are likely to have preferences"). That stands in contrast to this case (and *Comcast*) where Plaintiffs' theory of liability is that the consumer would have paid zero if it knew the danger of the Product, which theory of liability, as stated above, is consistent with the full refund model.

explained, "the only reason they ever considered purchasing it in the first place was because they thought it was ground coffee." *Id*. at *6. Similarly, while Plaintiffs here may have purchased the Product in order to try something new or for any variety of reasons, the only reason they considered purchasing it in the first place was that they believed—based on the deceptive packaging—that it was a safe, nourishing product for their hair. Plaintiffs intend to prove with common evidence that consumers would not have purchased the Product had they known that it was unsafe even when used as directed.

At oral argument, Defendants made much of the supposed "ancillary" benefits of the Product, arguing <u>for the first time</u> that consumers are not entitled to a full refund because a few of them may have liked the conditioner or shampoo included in the regimen. But neither the shampoo nor the conditioner make the Product safe or nourishing for consumers to apply to their hair. **Nor can any ancillary benefit change the fact that the product is dangerous.** It is little solace to a consumer that has experienced hair breakage or partial baldness from the Product to say that the hair that remains on her head is well shampooed or conditioned. Nor, similar to the analogy that the Court used, *see* Hr'g Tr. at 26, is it solace to the other purchasers who were not warned, that the Product is dangerous and fails of its essential purpose and that they could have gone bald or may do so if they use the Product again. In any event, any conceivable ancillary benefits do not defeat the full refund model where consumers would not have purchased the product had they known the message conveyed by deceptive marketing was untrue. *See Mullins v. Premier Nutrition Corp.*, No. 13-cv-1271, 2016 WL 1535057, at *6-7 (N.D. Cal. April 15, 2016) (accepting full refund model where there was "some evidence" that no class members would have bought Joint Juice had they known it would not help their joints, even though defendants argued it had numerous ancillary benefits such as hydration, vitamins, antioxidants and pleasing taste).

- 3 -

Similarly, Defendants argued that a full refund is not appropriate because a few women intended to purchase the Product again despite the fact that it felt "a little bit harsh" to them. Hr'g Tr. at 29. But willingness to tolerate some discomfort from use of the Product—under the illusion that it is safe and nourishing despite some tolerable discomfort—is not the same as willingness to purchase the Product when the risks of burning, scabbing, hair breakage, and hair loss are known to the consumer. These risks were not known to the consumer. In any event, any issues relating to the supposed ancillary benefits or satisfied customers go to the merits and can be litigated on a class wide basis, making class certification appropriate here. *See Rikos v. P&G*, 799 F.3d 497, 519 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493 (2016) ("P&G's claim that Align works for some individuals goes solely to the merits; it has no relevance to the class certification issue."); *id.* at 524 ("Whether purchasers were nevertheless satisfied with Align does not affect the propriety of a full-refund damages model."); *see also Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) ("Defendant's arguments that it can present proof that Coldcalm worked for some individual class members goes to the proof of the merits of Plaintiff's claim, not to the common question as to the overall efficacy of the product").

## II.   ANY VARIATIONS IN THE LAWS OF NEGLIGENT MISREPRESENTATION AND EXPRESS WARRANTY DO NOT DEFEAT PREDOMINANCE

### A.   The Requirements for Proving a Claim of Negligent Misrepresentation Are Substantially Similar Under the Laws of the Various States

Certification of Plaintiffs' negligent misrepresentation claims is appropriate given the facts of this case. As with Plaintiffs' fraud claim, common issues predominate. Indeed, the elements of a claim for negligent misrepresentation are similar to those required to prove common law fraud. *See, e.g., Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP*, 623 F. Supp. 2d 504, 510 (S.D.N.Y. 2009) ("Negligent misrepresentation 'involves most of the same elements as fraud, with a negligence standard substituted for the *scienter* requirement.'") (New York law) (citation

omitted); *Anwar v. Fairfield Greenwich Ltd.*, 826 F. Supp. 2d 578, 589 (S.D.N.Y. 2011) ("Under Florida law, a negligent misrepresentation claim requires demonstrating the same elements as a fraud claim, except that the tortfeasor need not have actual knowledge that the statement was a misrepresentation."), *citing Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1320 (S.D. Fl. 2009); *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012) ("[W]hile negligent misrepresentation shares four elements with fraud, it differs regarding the fifth element: mental state.") (California law).[2] With regard to the requisite mental state, common evidence (including Defendants' documents and witnesses) will show whether Defendants acted with the level of scienter needed to satisfy fraud or negligent misrepresentation.

During oral argument on Plaintiffs' Motion, the Court noted that to state a claim for negligent misrepresentation, some states require an affirmative representation while others allow a cause of action for an omission, and asked whether that difference would present problems in litigating the claim on a nationwide basis. *See* Hr'g Tr. at 8. As Plaintiffs explained at the hearing, in this case, that difference is not material and presents no bar to certification because Plaintiffs' claims are based on *both* affirmative misrepresentations and omissions. Specifically, Plaintiffs challenge Defendants' affirmative marketing claims that the Product is a "no-lye" relaxer and "rejuvenating ritual," which offers the "power of Amla Oil," "renowned for its natural rejuvenating

---

[2] *See also, e.g.*, *Avon Hardware Co. v. Ace Hardware Corp.*, 376 Ill. Dec. 348, 998 N.E.2d 1281, 1288 (App. Ct. 1st Dist. 2013) ("Negligent misrepresentation has essentially the same elements [as fraud under Illinois law], except that the defendant need not know that the statement is false . . . . Further, to plead a negligent misrepresentation claim, a plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information.") (citation omitted); *Rodriguez v. Lab. Corp. of Am. Holdings*, 13 F. Supp. 3d 121, 130 (D.D.C. 2014) ("The elements of negligent misrepresentation are similar to the elements of fraud, but do not include the element of fraudulent intent.") (D.C. law); *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 921 (Tex. 2010) ("Although similar in their essential elements, fraud is more difficult to prove than negligent misrepresentation 'due to the added element of intent to deceive.'") (citations omitted).

properties of intense nourishment and conditioning," as well as Defendants' non-disclosure of the Product's unsafe qualities. *See* Plaintiffs' Br. (Dkt. 105) at 5-6.[3] The benefits uniformly claimed for the Product and its Amla oil were illusory. As with Plaintiffs' claims of fraud, common evidence (including, particularly, expert testimony and Defendants' documents) will show the falsity of the statements, that Defendants knew (or should have known) that they are false, and Class members' reliance on such claims.[4]

In their brief in opposition to Plaintiffs' Motion, Defendants made no effort to identify which, if any, variances in negligent misrepresentation they contend are material in this case. The 28-page exhibit attached to the Declaration of Justin D. Lewis (Dkt. 120-5) ("Lewis Ex. 5") also fails to elucidate their position and instead supports that although certain states have slightly different legal standards or wording, the elements of a negligent misrepresentation claim are materially similar. In particular, although states may have slightly different standards governing Defendants' duty to communicate accurate information, Defendants have not argued that such differences would predominate over common issues in this case. Nor could they. Whether Defendants owed a duty to Class members to disclose accurate information is again subject to common proof and, at most, could require the creation of subclasses to account for different standards. It is difficult to imagine how in this case, where Defendants had superior (indeed,

---

[3] Moreover, the affirmative representation requirement is precisely the type of difference that can be managed through the creation of limited subclasses and use of appropriate verdict forms. Evidence of Defendants' material omissions would, in any event, be admissible to prove Defendants' fraud.

[4] *See* Reply (Dkt. 129) at 6, 13 (permissible inference of reliance in this case); *see also, e.g.*, *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 139 (S.D.N.Y. 2014) (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013), for the proposition that the element of reliance can be proven "through legitimate inferences based on the nature of the alleged misrepresentations," and finding the "two match" representation made by defendant dating service was sufficiently fundamental to allow the reasonable inference that plaintiffs relied on that claim).

exclusive) knowledge of their product formula, any of the other issues noted in Defendants' chart would defeat class certification.[5]

###### B.    Common Issues Predominate for the 25 State Multistate Class

Plaintiffs' request for certification of the Multistate Express Warranty Class is even more straightforward. There are no material variations in the applicable states' laws that preclude certification of the breach of express warranty claim. As detailed in Plaintiffs' briefing, this claim can be proven with common evidence. Plaintiffs submitted a survey in their opening brief establishing that the Multistate Class does not require privity as an element for breach of express warranty, thus eliminating any individualized determinations. *See* Rivas Decl. (Dkt. 107) at Ex. 8.

Defendants do not sufficiently challenge Plaintiffs' showing, instead, making the conclusory argument that there are differences in breach of warranty laws in the 50 states. *See* Dkt. 115 at 5.[6] Defendants' exhibit purporting to show differences among the breach of express warranty laws (*see* Lewis Decl. (Dkt. 120-6) at Ex. 6) identifies two areas that may differ across states: the element of reliance and the statute of limitations. *Id.* First, courts regularly find that differences among the applicable statute of limitations periods are not a bar to class certification. *See, e.g.*, *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004); *see also*, *Steigerwald v. BHH, LLC*, No. 1:15 CV 741, 2016 WL 695424, at *9 (N.D. Ohio Feb. 22, 2016).

---

[5] Defendants contend that two states, Arkansas and Idaho, do not recognize negligent misrepresentation as a separate cause of action (at least not in the context of this case). *See* Lewis Ex. 5 (Dkt. 120-5) at 1, 13, 17, 19. This presents no case management difficulties, as Arkansas and Idaho can be excluded from the class certified for this claim.

[6] *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58 (S.D.N.Y. 1993) (granting certification, reasoning that "the application of the laws of different states, if necessary, does not preclude class action litigation of this case. Issues relating to defendants' conduct will be common to the class regardless of the law to be applied. Individual issues of plaintiffs' reliance can be adjudicated through the use of subclasses and separate trials if necessary") (quoting *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39, 41 (E.D.N.Y. 1991)).

Second, any variation in reliance does not defeat class certification. Courts have recognized that for the vast majority of states reliance for the purpose of this claim is "subsumed into the question of whether the warranty was part of the basis of the bargain, and there is a presumption that a seller's affirmations go to the basis of the bargain."[7] Moreover, Plaintiffs have established, and Defendants have conceded, that the Challenged Representations were uniform and prominently emblazoned on each of the three iterations of the Product's packaging. *See* Reply (Dkt. 129) at 2. And as this Court has recognized, "courts have found that predominance exists over claims for breach of express warranties because an expressed promise on the packaging has been breached and therefore no individual inquiry is needed to resolve plaintiff's claim." *Ebin v. Kangadis Food Inc*., 297 F.R.D. 561, 569 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Additionally, the Second Circuit has instructed that claims based on uniform misrepresentations "are appropriate subjects for class certification." *In re U.S. Foodservice*, 729 F.3d at 118 (internal quotation marks and citation omitted). For those few states that require a higher showing of reliance (*see* Rosner Decl. (Dkt. 130-19) at Ex. 46), Plaintiffs will prove reliance with generalized evidence as with their fraud-based claims. *See supra* at 6 n.4.[8]

Accordingly, courts have certified multistate classes for breach of express warranty where the uniform statements on the packages are the basis of the bargain for the product, and where the plaintiffs allege that the representations are false.[9] Here, because the express warranties can be

---

[7] *See* Memorandum Order (Dkt. 98) at 23; *see also Hart v. BHH, LCC*, No. 15-cv-4804, 2017 WL 2912519, at *8 (S.D.N.Y. July 7, 2017) ("For product labeling cases such as this, reliance and causation are generally established through the presumption that a customer would not have purchased the product for any other reason than the advertised one.").

[8] "Individual issues of plaintiffs' reliance can be adjudicated through the use of subclasses and separate trials if necessary." *Maywalt*, 147 F.R.D. at 58 (citation omitted).

[9] *See, e.g.*, *Hart*, 2017 WL 2912519, at * 8 (certifying 25-state class for breach of express warranty where privity was not required); *see also*, *Steigerwald*, 2016 WL 695424, at *9 (certifying an 11-state class for breach of express warranty where the states' laws do not require privity and rejecting

- 8 -

proven to be false with common evidence, and because reliance can be inferred due to the nature of the Product, the alleged defect, and its labeling, no individual inquiry is needed to prove Plaintiffs' claim. Thus, the Court should certify the Multistate Class.

## III.   JUSTICE REQUIRES CERTIFICATION OF THE RULE 23(C)(4) ISSUE CLASS

Defendants raised the issue of claim-splitting for the first time at oral argument. *See* Hr'g Tr. at 38. Defendants are wrong on the law. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003) ("a class action, 'of course, is one of the recognized exceptions to the rule against claim-splitting'"), citing 18 *Moore's Federal Practice* § 131.40[3][e][iii] (2002). But more importantly, the colloquy with the Court on claim-splitting highlights the absolutely critical nature of the Rule 23(c)(4) issue class to consumers who suffered physical harm.

The Court recognizes that "there will be a group of people who will have [personal] injuries that won't be big enough to get a lawyer," and that those people "would still rather get their money back than get zilch." Hr'g Tr. at 37. The proposed Non-Economic Injury Class consists of women whose personal injuries are significant but who are unable to shoulder the costs of expert analysis and testimony in the context of individual lawsuits. Certification of the Non-Economic Injury Class will mean those women are ***not limited to getting their money back***, but rather have a chance at substantial justice.

The proposed representatives of the Non-Economic Injury Class suffered painful burning and scabbing, hair loss, and hair breakage. Plaintiff Finch, for example, has paid more than $1,000

---

defendants' argument that reliance requires individualized proof when the packaging's name and description describe the product's purported qualities); *Barden v. Hurd Millwork Co., Inc.*, 249 F.R.D. 316, 321 (E.D. Wis. 2008) (certifying a 20-state class for breach of express warranty where proof of reliance was not necessary); *Galoski v. Applica Consumer Prods.*, 309 F.R.D. 419, 425 (N.D. Ohio 2015) (certifying a 5-state class for breach of express warranty where privity was not required).

out-of-pocket to purchase human hair and have it woven into her own hair to hide the damage. *See* Finch Tr. (Dkt. 125-1), at 77. These periodic costs are ongoing for Ms. Finch, and the loss of her hair is extremely distressing to her. *See also* Riles Tr. (Dkt. 125-6), at 63 (Plaintiff Riles has spent in excess of $2,000 as a consequence of damages from the Product). The evidence suggests that there are many women in similar situations. Certification of the Non-Economic Injury Class would allow Plaintiffs to use common evidence to establish that the Product was unsafe when it left Defendants' hands. Women with personal injuries significant enough to cause them pain, humiliation and hundreds or even thousands of dollars in out-of-pocket costs would then have the benefit of those common proofs when submitting their own evidence of individual damages and individual causation.

In this unique case, the practical reality is that most consumers who have suffered physical harm and related out-of-pocket expenses will receive ***no compensation whatsoever for their personal injuries*** unless the Rule 23(c)(4) issue class is certified. As noted in Plaintiffs' opening brief, the Second Circuit encourages district courts to "take full advantage" of Rule 23(c)(4), and the Seventh Circuit has noted that doing so "will often be the sensible way to proceed." Plaintiffs' Br. (Dkt. 105) at 24. Defendants oppose the Non-Economic Injury Class vigorously—perhaps recognizing that their liability to consumers for negligence and strict liability in the five states included in that Class (California, Illinois, Kentucky, Missouri and Pennsylvania) alone may dwarf their liability for a full refund to the National Class—but none of their purported justifications for denying certification are well taken. *See* Reply (Dkt. 129) at 15. This Court can and should certify the Non-Economic Injury Class.

Respectfully submitted,

Dated: September 19, 2017      **LEVI & KORSINSKY, LLP**


By:   *s/ Rosemary M. Rivas*
    Rosemary M. Rivas

Rosemary M. Rivas (*pro hac vice*)
rrivas@zlk.com
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Michael H. Rosner (MR1034)
mrosner@zlk.com
Andrea Clisura (AC1313)
aclisura@zlk.com
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

Lori G. Feldman (LF3478)
**GERAGOS & GERAGOS APC**
7 West 24th Street
New York, NY 10010
Telephone: (917) 388-3121

Mark J. Geragos (*pro hac vice*)
geragos@geragos.com
Ben J. Meiselas (*pro hac vice*)
meiselas@geragos.com
**GERAGOS & GERAGOS APC**
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255

*Co-Lead Interim Counsel*

- 11 -